447 So.2d 922 (1984)
Lee Loyd COPELAND and Vaudeen Copeland, Appellants,
v.
ARMSTRONG CORK COMPANY, et al., Appellees.
No. 81-1369.
District Court of Appeal of Florida, Third District.
March 6, 1984.
As Corrected on Denial of Rehearing April 25, 1984.
*924 Frederick M. Baron, P.A. and Jane N. Saginaw, Dallas, Tex., Robles & Robles and Brian Weinstein, Miami, for appellants.
Dixon, Dixon, Hurst, Nicklaus & Webb and M. Stephen Smith, III, Miami, for Armstrong Cork Co.
Paul & Thomson and Jon W. Zeder, Miami, for GAF Corp.
Lee, Schulte, Murphy & Coe and Thomas J. Schulte, Miami, for Keene Corp.
Blackwell, Walker, Gray, Powers, Flick & Hoehl and James C. Blecke, Miami, for Owens-Corning Fiberglas Corp.
Steven R. Berger, Miami, for H.K. Porter Co., Inc.
Corlett, Merritt, Killian & Sikes and Gerald E. Rosser, Miami for Fibreboard Corp.
Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern, Miami, for Eagle-Picher Industries, Inc.
Thompson & Clark and Robert H. Schwartz, Miami, for Pittsburgh Corning Corp. and Combustion Engineering, Inc.
No appearance for Nicolet Industries, Inc.
No appearance for Owens-Illinois, Inc.
Before HUBBART and DANIEL S. PEARSON, JJ., and EZELL, BOYCE F., Jr. (Ret.) Associate Judge.
HUBBART, Judge.
The central issue presented by this appeal is at what point in time does a cause of action accrue for purposes of the statute of limitations in a products liability tort action [§§ 95.11(3)(e), 95.031(2), Fla. Stat. (1981)] where the claimed injury is a so-called "creeping disease," such as asbestosis, acquired over a period of years as a result of long-term occupational exposure to deleterious substances. We hold, in accord with the established law, that such a cause of action accrues when "the facts giving rise to the cause of action [a] were [actually] discovered [by the claimant] or [b] should have been discovered [by the claimant] with the exercise of due diligence...", § 95.031(2), Fla. Stat. (1981), whichever is earlier; this occurs whenever the accumulated effects of the deleterious substance manifest themselves to the claimant in a way which reasonably supplies some evidence of causal relationship to the subject manufactured product. We conclude that, absent special circumstances, this determination is generally a question of fact for the jury and is not, as a rule, appropriate for resolution on a summary judgment. We, accordingly, reverse the final summary judgments entered below in favor of the defendants in this products liability tort action. The action herein was not barred as a matter of law by the applicable statute of limitations; nor was it barred on the additional product identification ground relied upon by the trial court below.

I
The facts relating to the central issue on appeal are as follows. From 1942 until his retirement in 1975, the plaintiff Lee Loyd Copeland worked as a boilermaker in various shipyards and at numerous other jobs in and around the state of Florida, during which time he was exposed to various asbestos products. These products, in turn, were allegedly manufactured, sold and distributed by 16 separate companies or their predecessors in interest, all of which were made party defendants in this action.[1] The plaintiff Copeland claims that *925 this long-term exposure to these asbestos products caused his health to deteriorate slowly over a period of years until he contracted the disease of asbestosis from which he suffers today. These asbestos products primarily appeared in a white, dust-like form which was present during a good deal of the plaintiff Copeland's entire work life.
The plaintiff Copeland apparently first became aware of the possible health hazards from this asbestos dust in 1958 or 1959 when another crew at his work site walked off the job because of alleged health hazards from the excessive dust. From that point on, he heard general rumors from fellow workers that the asbestos dust could be harmful to one's health. It was not until the late 1960's, however, that he began to experience physical discomfort; he began at times to have breathing problems and watery eyes when working around the white asbestos dust. In April 1972, he experienced more serious symptoms  shortness of breath and coughing up blood  and immediately thereafter consulted two doctors in Plant City, Florida. These doctors both diagnosed the plaintiff's condition as pneumonia and emphysema. Neither doctor linked this condition to the plaintiff's work, but one doctor did suggest a change in jobs to avoid the dusty conditions at the job site. The plaintiff thereafter returned to the job site, but this time worked in a supervisory capacity.
From 1972 on, the plaintiff's physical condition slowly deteriorated until he retired in April 1975. At that point, he was unable to work due to shortness of breath, a symptom consistent with emphysema, and accordingly retired pursuant to his doctor's advice. In 1978, the plaintiff was referred to another doctor from Tampa who examined and diagnosed the plaintiff as having asbestosis, contracted as a result of his long-term exposure to asbestos dust at work from 1942-1975;[2] a second doctor concurred in this diagnosis.
On April 17, 1979, the plaintiff filed the instant lawsuit against the defendants in the Circuit Court for the Eleventh Judicial Circuit of Florida in and for Dade County, Florida. The complaint, as amended, alleged that the plaintiff during his occupational life was exposed to and injured by asbestos products manufactured, sold and distributed by the various defendants herein, that the defendants failed to warn the plaintiff that exposure to asbestos products creates a grave health risk, that defendants' failure to so warn was a proximate cause of plaintiff's injuries and that the defendants are therefore liable under theories of strict liability in tort, negligence and breach of warranty. The plaintiff's wife Vaudeen Copeland also sued as a co-plaintiff in this cause, claiming loss of consortium and damages as a result of the disease allegedly inflicted upon her husband.
After discovery revealed the above-stated facts, the 13 defendants remaining in the lawsuit[3] filed motions for summary judgment on various grounds. The trial court, after a full hearing, entered a final summary judgment for all defendants on the ground that the action was time-barred by the applicable statutes of limitations [§§ 95.11(3)(e), 95.031(2), Fla. Stat. (1981)]. The trial court also entered a final summary judgment for the defendants GAF Corporation, H.K. Porter Company, Inc. and Raybestos Manhattan, Inc. on the ground that the plaintiff had failed to adduce sufficient proof that the asbestos products to which he was exposed were manufactured, *926 distributed or sold by the above-stated defendants. This appeal follows.[4]

II
We turn first to the controlling rules of law which govern this appeal, as to both the statute of limitations and the product identification grounds given below for the final summary judgments herein.

A
The applicable statute of limitations in Florida plainly provides that "[a]n action [in tort] for injury to a person founded on the design, manufacture, distribution, or sale of personal property ...," as here, "shall be commenced ... [w]ithin four years." § 95.11(3)(e), Fla. Stat. (1981). Florida statute of limitations law further provides that "[a]ctions for products liability," as described above, "must be begun within the period described in this chapter [four years], with the period running from the time the facts giving rise to the cause of action [a] were [actually] discovered [by the claimant] or [b] should have been discovered [by the claimant] with the exercise of due diligence," § 95.031(2), Fla. Stat. (1981), whichever is earlier.
Where, as here, the claimed injury in a products liability action is a so-called "creeping disease," like asbestosis, acquired over a period of years as a result of long-term occupational exposure to injurious substances, such as asbestos dust, the courts have held that the action accrues for purposes of the statute of limitations "`only when the accumulated effects of the deleterious substance manifest themselves [to the claimant],'" Urie v. Thompson, 337 U.S. 163, 170, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282 (1949), "in a way which supplies some evidence of causal relationship to the manufactured product...." Karjala v. Johns-Manville Products Corp., 523 F.2d 155, 160-61 (8th Cir.1975).[5] At that point, it is said that the facts giving rise to the cause of action either [a] are actually known by the claimant, or [b] should have been known to the claimant with the exercise of due diligence. Admittedly, there is no magic moment when this point in time arrives as we often deal here with inherently debatable questions about which reasonable people may differ. For that reason, these matters are generally treated as fact questions for a jury to resolve, and therefore inappropriate for resolution on a summary judgment or directed verdict. See generally cases collected at n. 5, supra.

B
The controlling law on the products identification question is stated in the companion case herein of Copeland v. Celotex Corp., 447 So.2d 908 (Fla. 3d DCA 1984). In that case, this court held that (1) a plaintiff in a products liability case, *927 wherein the claimed injury is asbestosis, need not allege or prove that he was exposed to specific asbestos products of a defendant asbestos manufacturer, (2) the plaintiff need only allege and prove that he was exposed to asbestos products in general and join a substantial number of asbestos manufacturers which marketed asbestos products in this country during the time of the plaintiff's exposure to such products, (3) the defendant manufacturer's share of liability for the damages, if any, sustained by the plaintiff is the same as the said defendant's share of market sales for all asbestos products sold in this country during the period of the plaintiff's exposure to such products ("Thus, if a manufacturer supplied seven per cent of the entire production of the defective product, it would bear seven per cent of the liability to a given plaintiff." 447 So.2d at 914), and (4) the defendant asbestos manufacturer has the burden of establishing, given the above showing, that the plaintiff was not exposed to its asbestos products. Moreover, it is plain that this burden must be satisfied by the defendant manufacturer so as to exclude any genuine issue of material fact thereto before said defendant is entitled to a summary judgment in its favor on the products identification issue. See Vilardebo v. Keene Corp., 431 So.2d 620 (Fla. 3d DCA 1983).

III
We turn now to the facts presented by the instant case and conclude that the trial court erred in entering the final summary judgments under review.

A
First, we have no trouble in concluding that genuine issues of material fact are presented on this record as to when the plaintiff's claim accrued herein for purposes of the statute of limitations, thereby making a summary judgment inappropriate on the basis that the action was time barred. Stated differently, we cannot say as a matter of law, as did the trial court, that the plaintiff's claim accrued more than four years prior to the filing of the subject lawsuit and was, therefore, barred by the applicable four-year statute of limitations. Plainly, a jury could reasonably conclude on this record that the claimed disease of asbestosis did not manifest itself to the plaintiff in a way which supplied some evidence of causal relationship to the defendants' asbestos products until 1978, when two doctors in Tampa diagnosed the plaintiff's condition as being asbestosis  a disease directly related to his long-term occupational exposure to asbestos dust. Prior thereto, from 1972-78, the plaintiff's condition had been diagnosed by two other doctors as being emphysema, which was unrelated to the plaintiff's on-the-job exposure to asbestos products. True, the plaintiff in April 1972 did experience serious symptoms while working around the asbestos dust on the job, to wit: shortness of breath and the coughing up of blood. The plaintiff, however, immediately consulted two doctors who diagnosed his condition as emphysema and pneumonia which were unrelated to the plaintiff's exposure to asbestos dust. A jury could therefore reasonably conclude that the disease of asbestosis had not manifested itself to the plaintiff at that time in a way which showed any causal relationship to the plaintiff's exposure to the defendants' asbestos products.
We do not overlook the defendants' argument that the plaintiff should have been aware through the exercise of due diligence that his continued exposure to asbestos products was causing him serious health problems, especially when, in April 1972, he experienced the above-stated serious symptoms while working around the asbestos dust on the job. Surely, it is urged, the plaintiff knew or should have known at this point that the accumulated effects of the deleterious asbestos dust were manifesting themselves in such a way as to give some evidence of causal relationship to the asbestos dust; this is particularly true when the plaintiff had numerous other warnings prior thereto that the subject asbestos dust was most unhealthy. We certainly agree that a jury could reasonably so conclude, but we cannot agree *928 that a jury could not reasonably fail to do so. Decisive here is the plaintiff's consultation with two doctors immediately after serious symptoms appeared wherein the plaintiff's condition was diagnosed as emphysema and pneumonia unrelated to the job. This disclosure, we think, could lead a reasonable person to conclude, as the plaintiff did, that his condition was not related to the asbestos dust at all. Indeed, the inference seems irresistible as it was based on expert medical advice, rather than lay opinion. Still, it is true that one of those doctors did advise the plaintiff to change jobs so as to avoid the subject asbestos dust, which, it is urged, shows evidence that the plaintiff's serious symptoms were related to the asbestos dust. Perhaps, but, again, this is a question of fact for a jury to resolve, as conflicting reasonable inferences can surely be drawn from such a statement. In sum, then, a summary judgment for the defendants on the statute of limitations ground was entirely inappropriate in this case.

B
Second, on the products identification ground relied upon by the trial court in entering the final summary judgment below in favor of some of the defendants herein, it is plain that the plaintiff was not obliged to establish that he was exposed to identifiable asbestos products of the defendants herein in order to establish a prima facie case of products liability at trial herein, much less survive an adverse motion for summary judgment. On the contrary, where, as here, the defendants do not establish that the plaintiff was not exposed to their asbestos products, the entry of summary judgment in their favor on the products identification issue is entirely inappropriate. Today's decision in the companion case Copeland v. Celotex, supra, clearly compels this result, and on the authority of that case we must therefore reverse the final summary judgment herein based on the products identification ground.
The final summary judgments entered in the above-styled cause are reversed and the cause is remanded to the trial court for further proceedings.
NOTES
[1] The 16 companies which were originally made defendants in this action are: Armstrong World Industries, Inc., f/k/a Armstrong Cork Company; The Flintkote Company; GAF Corporation; Owens-Corning Fiberglas Corporation; Owens-Illinois, Inc.; Johns-Manville Sales Corporation; Eagle-Picher Industries, Inc.; Combustion Engineering, Inc.; H.K. Porter Company, Inc.; The Celotex Corporation; Raymark Industries, Inc., f/k/a Raybestos-Manhattan, Inc.; Unarco Industries, Inc.; Pittsburgh Corning Corporation; Nicolet Industries, Inc.; Fibreboard Corporation; Keene Corporation.
[2] For a thorough discussion of the lung disease of asbestosis and its symptoms, see Borel v. Fibreboard Paper Products Corp., 493 F.2d 1076, 1083-86 (5th Cir.1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).
[3] Three of the original 16 defendants were no longer in the lawsuit at that time. (1) The defendant Flintkote Company had previously settled with the plaintiffs and the action was dismissed as to this defendant. (2) The defendant Unarco Industries, Inc. was dismissed from the action by the trial court for lack of personal jurisdiction. (3) The defendant Celotex Corporation was dismissed from the action for failure to state a cause of action; an appeal was taken therefrom and this court has reversed in a companion decision released today. Copeland v. Celotex Corp., 447 So.2d 908 (Fla. 3d DCA 1984).
[4] During the pendency of this appeal, the defendants Armstrong World Industries, Inc., f/k/a Armstrong Cork Company, Raymark Industries, Inc., f/k/a Raybestos-Manhattan, Inc., GAF Corporation, Combustion Engineering, Inc., and H.K. Porter Company, Inc. have settled with the plaintiffs and are no longer appellees on this appeal. Also, the defendant Johns-Manville Sales Corporation has been severed and the appeal stayed as to it, pending the outcome of the bankruptcy proceedings involving the said defendant. Seven defendants are, therefore, left as party appellees on this appeal: Owens-Corning Fiberglas Corporation; Owens-Illinois, Inc.; Eagle-Picher Industries, Inc.; Pittsburgh Corning Corporation; Nicolet Industries, Inc.; Fibreboard Corporation; and Keene Corporation.
[5] For cases following, in substance, the above-stated discovery rule, see: Williams v. Borden, Inc., 637 F.2d 731 (10th Cir.1980) (meat wrapper's syndrome); Stoleson v. United States, 629 F.2d 1265 (7th Cir.1980) (nitroglycerin exposure); Fibreboard Paper Products Corp., 493 F.2d 1076, 1100-02 (5th Cir.1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974) (asbestosis); California: Velasquez v. Fibreboard Paper Products Corp., 97 Cal. App.3d 881, 159 Cal. Rptr. 113 (1979) (asbestosis); Illinois: Nolan v. Johns-Manville Asbestos, 85 Ill.2d 161, 52 Ill. Dec. 1, 5, 421 N.E.2d 864, 868 (Ill. 1981) (asbestosis); Kansas: Miller v. Beech Aircraft Corp., 204 Kan. 184, 460 P.2d 535, 539-40 (1969) (pulmonary fibrosis); Kentucky: Louisville Trust Co. v. Johns-Manville Products Corp., 580 S.W.2d 497 (Ky. 1979) (asbestosis); Maryland: Harig v. Johns-Manville Products Corp., 284 Md. 70, 394 A.2d 299 (1978) (asbestosis); Oregon: Schiele v. Hobart Corp., 284 Or. 483, 587 P.2d 1010 (1978) (meat wrapper's syndrome).