723 So.2d 833 (1998)
BROWN & WILLIAMSON TOBACCO CORPORATION, as successor by merger to The American Tobacco Company, Appellant,
v.
Grady CARTER and Mildred Carter, Appellees.
No. 96-4831.
District Court of Appeal of Florida, First District.
June 22, 1998.
As Amended on Partial Grant of Clarification and Denial of Rehearing December 31, 1998.
*834 Robert P. Smith and Robert A. Manning, Tallahassee; J.W. Prichard, Jr. and Robert B. Parrish of Moseley, Warren, Prichard & Parrish, Jacksonville, for Appellant.
Thomas E. Bezanson, Thomas E. Riley and Steven L. Vollins of Chadbourne & Parke, LLP, New York City, of Counsel.
Ada A. Hammond and Charles M. Johnston of Johnston & Hammond, Jacksonville; Norwood S. Wilner and Gregory H. Maxwell of Spohrer, Wilner, Maxwell, Maciejewski & Stanford, P.A., Jacksonville, for Appellees.
PER CURIAM.
In this appeal from a final judgment following a jury trial, appellant, Brown & Williamson Tobacco Corp. ("Brown & Williamson"), as successor by merger to The American Tobacco Co. ("ATC"), raises the following issues:
Whether the action should have been dismissed as barred by the statute of limitations, section 95.11(3), Florida Statutes, because the case was filed more than four years after Carter had notice that he had lung disease attributed to smoking?
Whether the court erred in allowing plaintiffs to proceed at trial upon a claim not pleaded against either ATC or its "Lucky Strike" product, to the effect that Brown & Williamson, by secreting documents from the Surgeon General in 1963, obstructed federal lawmaking that would have mandated more strident warnings to Grady Carter?
Whether the court erred in permitting the jury to decide the preemptive scope of the federal Labeling Act, 1969-1996, and also in allowing plaintiffs to impeach the federal warnings?
Whether the trial court reversibly erred in permitting speculative testimony by expert witness Dr. Feingold as well as by Grady Carter on the efficacy of his proposed warnings?
Whether the trial court reversibly erred in receiving as an admission by Brown & Williamson the confidential memorandum of advice and opinion work product written by general counsel Yeaman in 1963?
Based on our review of the record and consideration of the arguments presented, we conclude that the action was barred by the statute of limitations because the initial complaint was filed more than four years after Grady Carter knew or should have known, with the exercise of due diligence, that he had a smoking related disease. Therefore, we reverse and remand for dismissal. We will also address briefly several of the other issues raised.
Grady Carter, age 66 at the time of trial, began smoking in 1947 and continued to smoke until January, 1991. This suit was filed on February 10, 1995. Carter smoked Lucky Strikes, a product of ATC, Brown & Williamson's predecessor, from 1947 until 1972. He then changed to another company's product. The allegations in his complaint are predicated solely on his smoking Lucky Strikes from 1947 until 1972, on the theory that, by 1972, he was addicted to nicotine.
*835 The Carters filed suit on February 10, 1995. Appellant contends the applicable four year statute of limitations had run by that time, because the Carters had notice no later than February 5, 1991, that Grady had a smoking related disease. According to Grady's testimony, he became concerned about his health when, on January 29, 1991, he coughed and spit up blood. He immediately called and made an appointment with Dr. Decker for February 4, 1991. He was concerned that "something was bad wrong with me," and he went to the medical book to try and find out what the problem might be. He recalled finding two things that would result in spitting up blood: lung cancer and tuberculosis. As of that date, Grady quit smoking.
On February 4, 1991, Dr. Decker took chest x-rays and discussed them with Carter. Dr. Decker told Grady he had observed a spot or abnormality on the lung which could indicate several things, including cancer or tuberculosis. Dr. Decker referred Grady to a pulmonary specialist, Dr. Yergin, and told Carter he probably needed to see Dr. Yergin immediately. Carter initially saw Dr. Yergin the next day, February 5, 1991.
Dr. Yergin performed a number of tests, including a bronchoscopy, on February 12, 1991, in which a tissue sample is taken from the lung. On February 14, 1991, Dr. Yergin told Grady he had lung cancer. Grady ultimately had surgery and has survived to the present. He testified that, prior to February 14, 1991, he did not know for sure what the problem was.
Dr. Yergin testified that when Grady first came in on February 5, 1991, a chest x-ray had already been done. He looked at that x-ray and observed a large left upper lobe mass lesion which he indicated in his report of that visit was highly suggestive of a neoplasm, i.e., lung tumor. He did not tell Carter on that date that he had lung cancer based on the x-ray, because "many different things can mimic other things on the chest x-ray." Several additional tests were necessary to make an accurate diagnosis, including the bronchoscopy, in which a tissue sample is obtained. His notes of February 5, 1991 reflect his impressions: left upper lobe nodule, COPD, chronic bronchitis, cigarette abuse of approximately 65 "pack years." He did not know what the nodule was on that day. The nodule could have been tuberculosis or a slowly resolving pneumonia. He said it would not have been correct to tell Carter on February 5 that he had lung cancer. The bronchoscopy pathology report showed Carter had lung cancer.
Appellant contends the Carters had notice of any actionable injury from smoking on February 5, 1991, when Dr. Yergin made the initial diagnosis of chronic obstructive pulmonary disease ("COPD") and chronic bronchitis due to cigarette abuse. Appellees contend the question when Carter reasonably should have known of his smoking related injury was for the jury to decide. In particular, citing Copeland v. Armstrong Cork Co., 447 So.2d 922 (Fla. 3d DCA 1984), aff'd in part Celotex Corp. v. Copeland, 471 So.2d 533 (Fla.1985), appellees assert it would not be unreasonable for a jury to find that the date of the confirming diagnosis of a disease caused by a product is the operable date for the statute of limitations to begin running. In Copeland v. Armstrong Cork, the district court noted:
it is urged, the plaintiff knew or should have known at this point that the accumulated effects of the deleterious asbestos dust were manifesting themselves in such a way as to give some evidence of causal relationship to the asbestos dust; this is particularly true when the plaintiff had numerous other warnings prior thereto that the subject asbestos dust was most unhealthy. We certainly agree that a jury could reasonably so conclude, but we cannot agree that a jury could not reasonably fail to do so. Decisive here is the plaintiff's consultation with two doctors immediately after serious symptoms appeared wherein the plaintiff's condition was diagnosed as emphysema and pneumonia unrelated to the job. This disclosure, we think, could lead a reasonable person to conclude, as the plaintiff did, that his condition was not related to the asbestos dust at all. Indeed, the inference seems irresistible as it was based on expert medical advice, rather than lay opinion. Still, it is true that one of those doctors did advise *836 the plaintiff to change jobs so as to avoid the subject asbestos dust, which, it is urged, shows evidence that the plaintiff's serious symptoms were related to the asbestos dust. Perhaps, but, again, this is a question of fact for a jury to resolve, as conflicting reasonable inferences can surely be drawn from such a statement.
(emphasis supplied.) 447 So.2d at 927-28. The underlined portion of the above discussion distinguishes this case from Copeland. While appellees assert the record shows other possible causes of his spitting up blood were pneumonia and tuberculosis, at no time was Grady Carter's condition diagnosed as unrelated to smoking. Grady stopped smoking on January 29, 1991, after coughing up blood, and on February 4, 1991, was told of an abnormality on his lung and further told he needed to see Dr. Yergin immediately. We conclude that the evidence shows beyond dispute that Grady Carter knew or should have known, before February 10, 1991, that his lungs were injured, and he was on notice that the injury was probably caused by smoking. Therefore, by the time he filed suit on February 10, 1995, the four year statute of limitations had run. Neither absolute knowledge nor medical confirmation is required for a cause of action to accrue. See, e.g. University of Miami v. Bogorff, 583 So.2d 1000 (Fla.1991)(knowledge of dramatic change in condition and possible involvement of medical malpractice sufficient for accrual of cause of action).[1]
In Copeland, the district court said:
Where ... the claimed injury in a products liability action is a so-called `creeping disease,' like asbestosis, acquired over a period of years as a result of long-term ... exposure to injurious substances, such as asbestos dust, the courts have held that the action accrues for purposes of the statute of limitations "`only when the accumulated effects of the deleterious substance manifest themselves [to the claimant],'" Urie v. Thompson, 337 U.S. 163, 170, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282 (1949), "in a way which supplies some evidence of causal relationship to the manufactured product...." Karjala v. Johns-Manville Products Corp., 523 F.2d 155, 160-61 (8th Cir.1975).... At that point, it is said that the facts giving rise to the cause of action either [a] are actually known by the claimant, or [b] should have been known to the claimant with the exercise of due diligence.
447 So.2d at 926. Although the court went on to say this is generally a fact question for the jury, we conclude that the facts of this case unquestionably show that the accumulated effects of smoking manifested themselves to Grady Carter more than four years before he filed this lawsuit, and that reversal is required on this issue.[2]
Appellant raises an issue concerning the effect on the trial of this case of references to labeling practices in light of the federal preemption of causes of action based on the adequacy of warning labels on cigarette packaging. Were it not for our decision regarding the statute of limitations, we would reverse and remand for a new trial on this issue.
Although the 1965 federal labeling act, which first required cigarette warning labels, did not preempt state standards, the warnings required by the 1969 federal labeling act did so. In other words, state causes of action based on claims that additional or more clearly stated warnings should have been placed on advertising or promotional materials after 1969 are prohibited by federal law. See Cipollone v. Liggett Group, Inc., *837 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).
Before trial, Brown & Williamson sought partial summary judgment as to any claim that post 1969 cigarette warning labels were inadequate. Appellees contended that the phrase "advertising or promotional materials" should be narrowly construed. The trial court denied Brown & Williamson's motion for partial summary judgment on that issue, ruling that a genuine issue of material fact existed as to the "general usage of the terms `advertising or promotion'" as used in the labeling act. We agree that this ruling was in error. The courts have made it clear that, in the context of the labeling act, "advertising or promotion" encompasses all forms of communication directed to a mass market. See, e.g. Griesenbeck v. American Tobacco Co., 897 F.Supp. 815 (D.N.J.1995).
More significantly, we agree that Dr. Feingold's proposed package insert implicated post 1969 warnings and that the impact of this proposed insert was pervasive and not remedied by the jury instruction that the 1969 labeling requirements could not be challenged. During the trial of this case, Dr. Feingold, the plaintiff's expert, exhibited to the jury and testified concerning his proposal for an adequate warning about the dangers of cigarette smoking, in the form of a detailed illustrated proposed package insert. In our view, this extensive proposed package insert undoubtedly would run afoul of the federal preemption of state causes of action for inadequate warnings. The presentation of the insert, and testimony about it, strongly implied to the jury that appellant's post 1969 labeling was inadequate.
Appellees assert that the federal labeling law only preempts some state law causes of action, and only preempts failure to warn claims after 1969. They contend Dr. Feingold's package insert was relevant to support their strict liability claim by demonstrating that the product was unreasonably dangerous, and also to rebut Brown & Williamson's defense that no warning would have deterred Grady from smoking. Further, they assert that the primary objection is to the evidence itself rather than to a federal preemption issue.
Appellant's argument is persuasive. The testimony and exhibit were extensive, and the substance of the proposed package insert was not limited to a particular time period. In fact, it appears that some of the information contained in the insert was not available until after 1969. Significantly, as noted later in this opinion, Carter testified that additional information, such as that contained in the package insert, might have affected his smoking. We believe the presentation strongly implied that additional warnings should have been given, without limitation as to time period.
Appellant also asserts that in the use at trial of numerous documents that were generated by Brown & Williamson during the early 1960s, and Dr. Feingold's testimony concerning the documents, appellees in effect pursued an unpleaded claim against Brown & Williamson in its own right, for secreting research from the United States Surgeon General, when the claims in this case are against Brown & Williamson only as successor to ATC. (The merger of ATC and Brown & Williamson occurred after this lawsuit was filed.) Brown & Williamson contends it was unable to prepare to meet such an unpleaded claim. We agree, particularly because of the manner in which this information was presented to the jury.
Appellees introduced documents, some of hundreds listed pretrial as exhibits, which were not discovered until after this claim was filed, and after the merger of ATC with Brown & Williamson, indicating that certain research performed or sponsored by Brown & Williamson in the early 1960s was not provided to the surgeon general, who at that time was gathering information in preparation for an initial report on the effects of smoking. Although the court subsequently instructed the jury that there was no claim against Brown & Williamson directly, we do not believe the instruction was adequate to dispel the prejudice to Brown & Williamson, particularly when, for example, during opening statement to the jury, appellees' counsel told the jury that Brown & Williamson conducted "secret" research on addiction to nicotine which it never turned *838 over to the surgeon general, and therefore Brown & Williamson did not do its job. Further, appellees asserted in the courtroom with the jury present that "this research which was not turned over to the U.S. Surgeon General affected the course of public health, affected cautionary labels on packages, and affected Grady Carter."
Appellees contend that the documents were relevant on the theory that industry knowledge is attributable to all manufacturers, citing Dartez v. Fibreboard Corp., 765 F.2d 456 (5th Cir.1985), and Advance Chemical Co. v. Harter, 478 So.2d 444 (Fla. 1st DCA 1985), review denied 488 So.2d 829 (Fla.1986), thus, what Brown & Williamson knew in the early 1960s, ATC also should have known. They contend the evidence would have been relevant even if there had been no merger. We believe, however, that the focus placed on the objectionable documents was less on what Brown & Williamson, and therefore other manufacturers, knew, and more on Brown & Williamson's alleged failure to disclose all that it knew, an allegation not attributable to ATC by virtue of its position in the industry.
Appellant contends that a certain memorandum, dated July 17, 1963, was confidential work product and should not have been admitted in evidence. The trial court admitted the document on the theory that it fit within the crime or fraud exception to the privilege. We cannot agree. We perceive absolutely no evidence of criminal or fraudulent intent in the content of the memo; we would not reverse for a new trial based on this issue alone, however.
Finally, appellant raises an issue concerning the use of allegedly speculative testimony by Dr. Feingold and Grady Carter. While we believe the admission of the testimony may have violated the rule set forth in Drackett Products Co. v. Blue, 152 So.2d 463 (Fla.1963) ("statement by a witness as to what action he would have taken if something had occurred which did not occur ... will ordinarily be rejected as inadmissible and as proving nothing."), we also believe that any error was insignificant in the context of this case.
REVERSED.
BARFIELD, C.J., JOANOS, J., and SMITH, LARRY G., Senior Judge, concur.
NOTES
[1] Appellee asserts the supreme court receded from Bogorff in Tanner v. Hartog, 618 So.2d 177 (Fla.1993). Both Bogorff and Tanner were medical malpractice cases, which distinguishes them in part from the present case. The court discussed whether knowledge of the injury or the negligent act or both was required to trigger the running of the statute of limitations. In Tanner, the court refined its analysis and held that the medical malpractice statute of limitations would be triggered when there was "not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice."
[2] We have considered and rejected appellees' argument regarding separate injuries as separate causes of action with different accrual dates, as we have determined the accrual date for all smoking related lung injuries occurred more than four years before the complaint was filed.