778 So.2d 932 (2000)
Grady CARTER, et al., Petitioners,
v.
BROWN & WILLIAMSON TOBACCO CORPORATION, as successor by merger to The American Tobacco Company, Respondents.
No. SC94797.
Supreme Court of Florida.
November 22, 2000.
Rehearing Denied January 19, 2001.
*934 Norwood S. Wilner, Gregory H. Maxwell, and Stephanie J. Hartley of Spohrer, Wilner, Maxwell & Matthews, Jacksonville, Florida; Ada A. Hammond of Johnston, Hammond & Burnett, Jacksonville, Florida; and Raymond Ehrlich of Holland & Knight, L.L.P., Jacksonville, Florida, for Petitioners.
J.W. Prichard, Jr. and Robert B. Parrish of Moseley, Warren, Prichard & Parrish, Jacksonville, Florida; Thomas E. Bezanson and Thomas E. Riley of Chadbourne & Parke, L.L.P., New York, New York; and Barry Richard of Greenberg Traurig, P.A., Tallahassee, Florida, for Respondent.
Jack W. Shaw, Jr., Orlando, Florida, for DES Action, Amicus Curiae.
HARDING, J.
We have for review the decision of Brown & Williamson Tobacco Corp. v. Carter, 723 So.2d 833 (Fla. 1st DCA 1998), which expressly and directly conflicts with Celotex Corp. v. Copeland, 471 So.2d 533 (Fla.1985). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
Brown & Williamson and Copeland are in conflict regarding when the statute of limitations begins to run in a product liability cause of action involving a latent or "creeping" disease. In such cases, we conclude that the cause of action accrues when the accumulated effects of the deleterious substance manifest themselves to the claimant in a way which supplies some evidence of a causal relationship to the manufactured product. See Copeland v. Armstrong Cork Co., 447 So.2d 922, 926 (Fla. 3d DCA 1984). By applying this standard to the present case, we find that the Carters' claims were not barred by the statute of limitations and, accordingly, we quash the district court's decision below. We will also briefly address two other issues raised by the district court in its decision; first, whether the Carters' claims were preempted by the Federal Cigarette Labeling Act of 1969 and, second, whether there was an unpleaded cause of action.

I. Facts

A. Case Below
Grady Carter smoked cigarettes for forty-four years, from 1947 until January 1991. Initially, Carter smoked unfiltered Lucky Strike cigarettes (a product of the American Tobacco Company or ATC, Brown & Williamson's predecessor), and in 1972, he changed to another company's product. According to Carter's testimony, he became concerned about his health on January 29, 1991, when he coughed and spit up blood. Carter, concerned that "something was bad wrong with me," consulted a family medical dictionary, which gave two possible explanations for spitting up blood: lung cancer and tuberculosis. Carter immediately called and made an appointment with Dr. Gary Decker for February 4, 1991. On January 29, 1991, Carter quit smoking.
On February 4, 1991, Dr. Decker took chest x-rays and told Carter that he had observed a spot or abnormality on his lung. According to Dr. Decker, this spot could be indicative of several things, including cancer or tuberculosis. Since Dr. Decker was not a lung specialist, he referred Carter to Dr. Bruce Yergin, a pulmonary specialist. Dr. Decker further expressed that Carter probably needed to see Dr. Yergin immediately. Carter saw Dr. Yergin the very next day.
When Carter first visited Dr. Yergin on February 5, 1991, Dr. Yergin examined the chest x-rays and observed a large left upper lobe mass lesion, which he indicated in his report was "highly suggestive of a neoplasm [`most suspicious' for a lung tumor]." Dr. Yergin also noted his impressions of this first visit in Carter's file, which read: "left upper lobe nodule, COPD (chronic obstructive pulmonary disease), chronic bronchitis, cigarette abuse 65 pack years." Based on his initial examination *935 of Carter's x-rays, Dr. Yergin testified that he did not tell Carter that he had lung cancer because "many different things can mimic other things on the chest x-ray" and it would have been "absolutely" incorrect to tell Carter that he had lung cancer during the initial visit. Dr. Yergin also testified that on February 5, 1991, he did not know what the nodule was; the nodule could have been tuberculosis or slowly resolving pneumonia and additional tests were necessary in order to make an accurate diagnosis.
On February 12, 1991, Dr. Yergin performed numerous tests, including a bronchoscopy, during which a tissue sample was taken from the lung. The bronchoscopy pathology report showed that Carter had lung cancer and Dr. Yergin told Carter that he had lung cancer on February 14, 1991. Ultimately, Carter had surgery to remove the cancer.
Carter and his wife filed suit against the American Tobacco Company on February 10, 1995, asserting claims for negligence and strict liability. The Carters later amended the style of their case to reflect the merger of ATC and Brown & Williamson. The allegations in the complaint were predicated solely on Carter's smoking Lucky Strikes from 1947 until 1972. Prior to trial, the trial court ruled that whether or not the action was barred by the statute of limitations was an issue for the jury to decide. The jury subsequently determined that the action was not barred by the statute of limitations and awarded a verdict in favor of the Carters on both claims.
Brown & Williamson appealed to the First District Court of Appeal, which reversed the jury's verdict and remanded the case with the instruction that it be dismissed due to the claim being barred by the statute of limitations. The district court concluded that the evidence demonstrated beyond dispute that Carter "knew or should have known, before February 10, 1991, that his lungs were injured, and he was on notice that the injury was probably caused by smoking." Brown & Williamson, 723 So.2d at 836.
The district court also held that if it were not for its decision regarding the statute of limitations, the court would have reversed and remanded the case for a new trial because the Carters were allowed to introduce testimony and evidence at trial which alluded to information that was preempted by the 1969 Federal Cigarette Labeling and Advertising Act. Moreover, the district court found that the trial court erred in permitting the Carters to pursue an unpleaded claim against Brown & Williamson. However, the district court did not reach a conclusion as to whether this error would be grounds for reversal.

B. Conflict Case
In Celotex Corp. v. Copeland, the plaintiff filed a product liability cause of action against sixteen different manufacturers and distributors of asbestos products, alleging that his injury was due to exposure to asbestos products over a thirty-three-year period (commencing in 1942) when he worked as a boilermaker. The plaintiff claimed that the long-term exposure to asbestos products caused his health to deteriorate slowly over a number of years until he developed asbestosis. In 1958 or 1959, the plaintiff first became aware of the possible health hazards from the exposure to asbestos dust, "when another crew at his work site walked off the job because of alleged health hazards from the excessive dust." Copeland v. Armstrong Cork Co., 447 So.2d at 925. However, the plaintiff did not suffer any physical problems until the late 1960s, when he started to feel "physical discomfort," specifically, difficulty in breathing and watery eyes when he was working around asbestos dust. In 1972, after the plaintiff experienced the more serious symptoms of shortness of breath and coughing up blood, the plaintiffs conditions were diagnosed as pneumonia and emphysema by two different doctors. It was not until 1978 that the plaintiff was "conclusively" diagnosed as having asbestosis.
*936 On April 17, 1979, the plaintiff filed a lawsuit, and in his complaint the plaintiff alleged that
during his occupational life [he] was exposed to and injured by asbestos products manufactured, sold and distributed by the various defendants herein, that the defendants failed to warn the plaintiff that exposure to asbestos products creates a grave health risk, that defendants' failure to so warn was a proximate cause of [the] plaintiffs injuries and that the defendants are therefore liable under theories of strict liability in tort, negligence and breach of warranty.
Id. In response, the defendants argued that the action was barred by the statute of limitations. Specifically, the defendants alleged that the plaintiff knew or should have known that the accumulated effects of the asbestos dust were manifesting themselves in such a way as to give some evidence of a causal relationship to the asbestos dust in 1972, when the plaintiff experienced the serious symptoms of shortness of breath and coughing up blood. The trial court agreed and entered a final summary judgment on the ground that the action was time-barred. On appeal, the Third District Court of Appeal reversed. The district court reasoned that in a products liability action involving a "creeping disease," the action accrues "`only when the accumulated effects of the deleterious substance manifest themselves [to the claimant],' in a way which supplies some evidence of causal relationship to the manufactured product." Id. at 926 (citation omitted). The district court added that "these matters are generally treated as fact questions for a jury to resolve, and therefore inappropriate for resolution on a summary judgment or directed verdict." Id. The district court concluded:
Decisive here is the plaintiffs consultation with two doctors immediately after serious symptoms appeared wherein the plaintiffs condition was diagnosed as emphysema and pneumonia unrelated to the job. This disclosure, we think, could lead a reasonable person to conclude, as the plaintiff did, that his condition was not related to the asbestos dust at all. Indeed, the inference seems irresistible as it was based on expert medical advice, rather than lay opinion. Still, it is true that one of those doctors did advise the plaintiff to change jobs so as to avoid the subject asbestos dust, which, it is urged, shows evidence that the plaintiffs serious symptoms were related to the asbestos dust. Perhaps, but, again, this is a question of fact for a jury to resolve, as conflicting reasonable inferences can surely be drawn from such a statement.
Id. at 928. Upon review, this Court approved the reasoning of the district court on this issue. See Celotex Corp. v. Copeland, 471 So.2d at 539.

II. Analysis

A. Statute of Limitations
Section 95.11(3)(e), Florida Statutes (1981), states that "[a]n action for injury to a person founded on the design, manufacture, distribution, or sale of personal property... shall be commenced ... [w]ithin four years." See also Copeland v. Armstrong Cork Co., 447 So.2d at 926. The "Florida statute of limitations law further provides that `[a]ctions for products liability,' as described above, `must be begun within the period described in this chapter [four years], with the period running from the time the facts giving rise to the cause of action [a] were [actually] discovered [by the claimant] or [b] should have been discovered [by the claimant] with the exercise of due diligence,' § 95.031(2), Fla. Stat. (1981), whichever is earlier." Id. (alterations in original). Thus, the applicable limitations period in the present case is four years.
Lung cancer caused by smoking is a latent or "creeping disease." See Copeland v. Armstrong Cork Co., 447 So.2d at 926 (stating that a latent or "creeping" disease is a disease acquired over a period of years as a result of long-term exposure *937 to injurious substances); see also Brown & Williamson Tobacco Corp. v. Young, 690 So.2d 1377, 1379 (Fla. 1st DCA 1997) (a latent disease is "difficult to pinpoint when and where it began"). In products liability actions involving latent or creeping diseases, we agree with the test forwarded by the Third District Court of Appeal in Copeland v. Armstrong Cork Co.: "[T]he action accrues ... `only when the accumulated effects of the deleterious substance manifest themselves [to the claimant],' in a way which supplies some evidence of causal relationship to the manufactured product." 447 So.2d at 926 (citation omitted). See also Barnes v. Clark Sand Co., 721 So.2d 329, 332 (Fla. 1st DCA 1998) ("`[M]anifestation' of a latent injury in a products liability claim occurs when the plaintiff is on notice of a causal connection between exposure to the allegedly defective product and the resultant injury."), approved sub nom. Pulmosan Safety Equipment Corp. v. Barnes, 752 So.2d 556 (Fla.2000).[1]
As pointed out by the district court in Copeland v. Armstrong Cork Co., "there is no magic moment when [the point when the facts giving rise to the cause of action are known or should have been known by the plaintiff] arrives as we often deal here with inherently debatable questions about which reasonable people may differ." 447 So.2d at 926. Therefore, we also agree with the district court in Copeland v. Armstrong Cork Co. that the question of when the statute of limitations begins to run in this type of case is "generally treated as [a] fact question[ ] for a jury to resolve, and therefore inappropriate for resolution on a summary judgment or directed verdict." Id. In Celotex Corp. v. Copeland, 471 So.2d 533, 539 (Fla.1985), this Court approved the district court's holding in Copeland v. Armstrong Cork Co.: "We agree with the district court that, under these circumstances, when the disease manifested itself was a question of fact not subject to resolution by summary judgment."
In the present case, the First District Court of Appeal attempted to distinguish Copeland v. Armstrong Cork Co.:
In Copeland v. Armstrong Cork, the district court noted:
it is urged, the plaintiff knew or should have known at this point that the accumulated effects of the deleterious asbestos dust were manifesting themselves in such a way as to give some evidence of causal relationship to the asbestos dust; this is particularly true when the plaintiff had numerous other warnings prior thereto that the subject asbestos dust was most unhealthy. We certainly agree that a jury could reasonably so conclude, but we cannot agree that a jury could not reasonably fail to do so. Decisive here is the plaintiffs consultation with two doctors immediately after serious symptoms appeared wherein the plaintiff's condition was diagnosed as emphysema and pneumonia unrelated to the job. This disclosure, we think, could lead a reasonable person to conclude, as the plaintiff did, that his condition was not related to the asbestos dust at all. Indeed, the inference seems irresistible as it was based on expert medical advice, rather than lay opinion. Still, it is true that one of those doctors did *938 advise the plaintiff to change jobs so as to avoid the subject asbestos dust, which, it is urged, shows evidence that the plaintiffs serious symptoms were related to the asbestos dust. Perhaps, but, again, this is a question of fact for a jury to resolve, as conflicting reasonable inferences can surely be drawn from such a statement.
447 So.2d at 927-28 (emphasis supplied). The underlined portion of the above discussion distinguishes this case from Copeland. While appellees assert the record shows other possible causes of his spitting up blood were pneumonia and tuberculosis, at no time was Grady Carter's condition diagnosed as unrelated to smoking. Grady stopped smoking on January 29, 1991, after coughing up blood, and on February 4, 1991, was told of an abnormality on his lung and further told he needed to see Dr. Yergin immediately. We conclude that the evidence shows beyond dispute that Grady Carter knew or should have known, before February 10, 1991, that his lungs were injured, and he was on notice that the injury was probably caused by smoking. Therefore, by the time he filed suit on February 10, 1995, the four year statute of limitations had run.
723 So.2d at 835-36. We, however, are not persuaded by this distinction. In fact, the very language that the First District quoted from Copeland v. Armstrong Cork Co. is persuasive as to why such issues should be resolved by a jury. In the present case, as in Copeland v. Armstrong Cork Co., we acknowledge that a jury could reasonably conclude that Carter knew or should have known, on either January 29, 1991 (when Carter coughed and spit up blood) or February 4, 1991 (when Dr. Decker told Carter that he observed a spot on his lung and that this spot could be related to several things including cancer or tuberculosis), that the effects of smoking cigarettes manifested themselves to Carter in a way which supplied some evidence of a causal relationship to the cigarettes. However, we cannot agree that a jury could not reasonably fail to do so. Given that Dr. Decker gave Carter at least two possible explanations for the spot, one of which was tuberculosis based on Carter's recent contact with someone who had that disease, a reasonable person could conclude that the spot was not related to smoking or cancer. Because conflicting reasonable inferences can be drawn from the record, this issue was a question of fact for the jury to resolve.
In support of its argument, Brown & Williamson cites to this Court's opinion in University of Miami v. Bogorff, 583 So.2d 1000 (Fla.1991), for the proposition that knowledge of a legal certainty is not required to start the limitations clock, but rather a plaintiff need only have notice, through the exercise of reasonable diligence, of the possible invasion of his or her legal rights. The district court below also relied on Bogorff in support of its conclusion that "[n]either absolute knowledge nor medical confirmation is required for a cause of action to accrue." 723 So.2d at 836. We reject this argument for two reasons.
First, we point out that the present case involves a products liability claim whereas Bogorff involved a medical malpractice claim, and therefore the two cases are distinguishable. Additionally, it is important to note that the holding in Bogorff was modified by our decision in Tanner v. Hartog, 618 So.2d 177 (Fla.1993). Bogorff applied the so-called Nardone rule: the principle that the limitations period begins to run when the plaintiff knew or should have known that either the injury or the negligence had occurred. See Nardone v. Reynolds, 333 So.2d 25 (Fla.1976). In Tanner, we recognized that a strict application of the Nardone rule can sometimes lead to harsh results, especially in cases where "there is nothing about an injury that would communicate to a reasonable lay person that the injury is more likely the result of some failure of medical care than a natural occurrence that can arise in *939 the absence of medical negligence." Norsworthy v. Holmes Regional Medical Center, Inc., 598 So.2d 105, 107 (Fla. 5th DCA 1992), approved sub nom. Kronman v. Norsworthy, 618 So.2d 186 (Fla.1993), cited in Tanner, 618 So.2d at 180. Therefore, in Tanner, we modified the Nardone rule and concluded that "the knowledge of the injury as referred to in the rule as triggering the statute of limitations means not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice." 618 So.2d at 181 (footnote omitted).
Second, we stress that in all of these cases, "[i]t is a well-settled principle of Florida jurisprudence that summary judgment should not be granted unless the facts are so clear and undisputed that only questions of law remain." Dade County School Board v. Radio Station WQBA, 731 So.2d 638, 643 (Fla.1999). On the basis of the record in the present case, there existed a genuine issue of material fact regarding when Carter knew or should have known of the facts giving rise to the cause of action. "[I]t is not the function of an appellate court to reevaluate the evidence and substitute its judgment for that of the jury." Helman v. Seaboard Coast Line RR. Co., 349 So.2d 1187, 1189 (Fla.1977). In concluding that "the facts of this case unquestionably show that the accumulated effects of smoking manifested themselves to Grady Carter more than four years before he filed this lawsuit," Brown & Williamson, 723 So.2d at 836, the district court overstepped its appellate role. Thus, we quash the district court's decision on this issue.

B. Preempted Claims
If it were not for its decision regarding the statute of limitations, the district court's holding would have been to reverse and remand the case for a new trial because the Carters were allowed to introduce testimony and evidence at trial which alluded to evidence that was preempted by the 1969 Federal Cigarette Labeling and Advertising Act. See Brown & Williamson, 723 So.2d at 836. Again, we agree with the trial court and quash the district court's decision on the preemption issue.
In 1965, Congress passed the Federal Cigarette Labeling and Advertising Act, which required all cigarette packages to contain the warning: "Caution: Cigarette Smoking May Be Hazardous to Your Health." Pub.L. 89-92, § 4, 79 Stat. 282. The purpose of the Labeling Act was to adequately inform the public about the dangers of cigarette smoking and to protect the national economy from the imposition of diverse and confusing warning requirements regarding cigarettes. See Cipollone v. Liggett Group, Inc., 505 U.S. 504, 514, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Four years later, Congress enacted the Public Health Cigarette Smoking Act of 1969, which amended the 1965 Act to require the following warning: "The Surgeon General Has Determined That Cigarette Smoking is Dangerous to Your Health." Pub.L. 91-222, § 4, 84 Stat. 87. The 1969 Act included the following provision:
(b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.
Pub.L. 91-222, § 5 (codified at 15 U.S.C. § 1334(b) (1994)).
In Cipollone v. Liggett Group, Inc., 505 U.S. 504, 524, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the United States Supreme Court was asked to consider whether state common law actions filed against tobacco companies for failure to warn, breach of warranty, fraudulent misrepresentation, and conspiracy were preempted by either the 1965 or 1969 Acts. A plurality of the United States Supreme Court held that the 1965 Act only preempted state and federal rulemaking bodies from mandating particular cautionary statements and did *940 not preempt state-law damages actions. See id. at 519-20, 112 S.Ct. 2608. However, the Court came to a different conclusion regarding the 1969 Act. The plurality addressed each of the claims separately. First, the plurality held that the 1969 Act expressly preempts post-1969 failure-towarn claims that cigarette "advertising or promotions should have included additional, or more clearly stated, warnings." Id. at 524, 112 S.Ct. 2608. The plurality added that the "[1969] Act does not, however, pre-empt petitioner's claims that rely solely on respondent's testing or research practices or other actions unrelated to advertising or promotion." Id. at 524-25, 112 S.Ct. 2608. Next, the plurality concluded that express warranty claims were not preempted by the 1969 Act because liability for express warranty is not imposed under state law but rather by the warrantor's express actions. See id. at 525-27, 112 S.Ct. 2608. The plurality also concluded that the 1969 Act does not preempt fraudulent misrepresentation claims because fraudulent misrepresentation claims are based on a state law duty not to deceive rather than a state law duty "based on smoking and health." Id. at 528-29, 112 S.Ct. 2608. Finally, the plurality concluded that the 1969 Act does not preempt conspiracy to defraud claims because such claims are based on a duty not to conspire to commit fraud rather than a duty "based on smoking and health." Id. at 530, 112 S.Ct. 2608.
The district court below stated that the trial court made two separate errors concerning the preemption issue. First, the district court held that the trial court erred in denying Brown & Williamson's pretrial motion for partial summary judgment. Second, the district court found that the trial court erred in permitting Dr. Allan Feingold, an expert witness for the plaintiff, to testify regarding a proposed package insert. We disagree with the district court on both of these points.
Prior to trial, Brown & Williamson sought partial summary judgment as to any claim that post-1969 cigarette warning labels were inadequate. In response, the Carters argued that the 1969 Act only preempted claims regarding ATC's post-1969 advertising or promotions, but that according to the language of Cipollone itself, the 1969 Act does not preempt their claims that rely solely on ATC's "testing or research practices or other actions unrelated to advertising or promotion." Cipollone, 505 U.S. at 525, 112 S.Ct. 2608. The Carters also attached a number of so-called advocacy statements of the cigarette industry to its motion, as well as the affidavit of Professor Richard Polley. Polley stated in the affidavit that "in numerous instances, major cigarette manufacturers conducted public relations campaigns, including but not limited to purchasing newspaper space for making public statements [and] issuing press releases." Polley stated that such mass communications are not considered advertising or promotion, as the statements did not contain the cautionary label which were federally required on all advertisements or promotions. In its order denying the motion for partial summary judgment, the trial court cited to Polley's affidavit and concluded that "a genuine issue of material fact" exists regarding the general usage of the terms "`advertising or promotions.'" Brown & Williamson argues that this decision paved the way for the Carters to introduce a proposed package insert.
In reversing the trial court on this issue, the district court stated:
We agree that [the trial court's ruling on the motion for partial summary judgment] was in error. The courts have made it clear that, in the context of the labeling act, "advertising or promotion" encompasses all forms of communication directed to a mass market. See, e.g. Griesenbeck v. American Tobacco Co., 897 F.Supp. 815 (D.N.J.1995).
We, however, are not persuaded that the Griesenbeck court's broad interpretation of the terms "advertising or promotion" is necessarily correct. Certainly, the plain *941 language of the Cipollone opinion itself demonstrates that the Supreme Court envisioned that there were other forms of communication unrelated to advertising or promotion. See, e.g., Philip Morris Inc. v. Harshbarger, 122 F.3d 58 (1st Cir.1997) (holding that Massachusetts statute requiring manufacturers of tobacco products to disclose additives and nicotine-yield ratings for their products to a state agency did not violate the 1969 Act, as such communication did not amount to advertising or promotion). Nevertheless, as stated above, summary judgment should not be granted unless the facts are so clear and undisputed that only questions of law remain. Based on Polley's affidavit, we cannot conclude that the trial court erred in denying Brown & Williamson's motion for partial summary judgment. More importantly, any such error on this issue would be harmless, as our review of the record reveals that the Carters' claims were clearly limited to injuries which allegedly resulted from the defendant's failure to provide adequate warnings prior to 1969, as explained below.
The district court held that the trial court also erred in permitting plaintiffs' expert Dr. Feingold to introduce a proposed package insert:
More significantly, we agree that Dr. Feingold's proposed package insert implicated post 1969 warnings and that the impact of this proposed insert was pervasive and not remedied by the jury instruction that the 1969 labeling requirements could not be challenged. During the trial of this case, Dr. Feingold, the plaintiffs expert, exhibited to the jury and testified concerning his proposal for an adequate warning about the dangers of cigarette smoking, in the form of a detailed illustrated proposed package insert. In our view, this extensive proposed package insert undoubtedly would run afoul of the federal preemption of state causes of action for inadequate warnings. The presentation of the insert, and testimony about it, strongly implied to the jury that appellant's post 1969 labeling was inadequate.
Appellees assert that the federal labeling law only preempts some state law causes of action, and only preempts failure to warn claims after 1969. They contend Dr. Feingold's package insert was relevant to support their strict liability claim by demonstrating that the product was unreasonably dangerous, and also to rebut Brown & Williamson's defense that no warning would have deterred Grady from smoking. Further, they assert that the primary objection is to the evidence itself rather than to a federal preemption issue.
Appellant's argument is persuasive. The testimony and exhibit were extensive, and the substance of the proposed package insert was not limited to a particular time period. In fact, it appears that some of the information contained in the insert was not available until after 1969. Significantly, as noted later in this opinion, Carter testified that additional information, such as that contained in the package insert, might have affected his smoking. We believe the presentation strongly implied that additional warnings should have been given, without limitation as to time period.
Brown & Williamson, 723 So.2d at 837. We disagree. During the trial, the Carters' counsel asked Dr. Feingold about a proposed package insert which Dr. Feingold stated should have been prepared by the cigarette industry, and in particular, ATC. The defense objected, arguing that the package insert was preempted by the 1969 Act. The Carters' counsel argued at sidebar that the insert was only being offered to support the Carters' pre-1969 claims. The trial court overruled the defense's objection and permitted the introduction of the insert, but assured the defense that the jury would be specifically instructed regarding which dates to be considered by them with respect to warnings. Subsequently, at the end of the trial, *942 the trial court gave the jury the following instruction:
The federal law does not limit the liability of [a] defendant against the claim of a failure to warn before July 1, 1969. However, you are not to base any findings of liability on a determination that after July 1, 1969, the defendant should have included additional or more clearly stated warnings in the advertising or promotion of its cigarettes or that the defendant, through its advertising or promotional practices, neutralized, minimized, or undermined the effect of the federally mandated warnings during that time.
Absent a finding to the contrary, juries are presumed to follow the instructions given them. See Sutton v. State, 718 So.2d 215, 216 (Fla. 1st DCA 1998). Even assuming that some of the information in the proposed insert was not available until after 1969, we do not find that this prejudiced Brown & Williamson, as this information was not the focus of Dr. Feingold's testimony. Hence, we disapprove the district court's analysis and conclusion on this issue.

C. Unpleaded Claim
Brown & Williamson asserts that the district court correctly ruled that the Carters were improperly allowed to submit proof of a cause of action they never alleged. The district court found that the Carters' use of the so-called Brown & Williamson documents during the trial, as well as expert testimony concerning the documents, in effect amounted to an unpleaded claim against Brown & Williamson in its own right rather than against Brown & Williamson as successor to ATC. Again, we disagree.
The evidence in question consisted of documentary and testimonial evidence showing research conducted by Brown & Williamson, the British American Tobacco Company, and the Battelle Institute in the 1950s through the 1970s. The story behind how this evidence came to light is most peculiar, but fortunately the tale is one that we need not tell nor address. See Stanton A. Glantz et al., The Cigarette Papers (1996); Lisa Bero, et al., Lawyer Control of the Tobacco Industry's External Research Program: The Brown and Williamson Documents, 274 JAMA 241 (1995). The evidence allegedly revealed that Brown & Williamson and its affiliates had conducted research on the dangers of smoking and learned as early as 1963 that nicotine was addictive.
During the trial, the Carters presented the testimony of ATC officials, including a former CEO and a former research director, who testified that ATC never conducted any tests to determine whether smoking was harmful or whether nicotine was addictive. The Carters argue that the Brown & Williamson documents were relevant to establish the state of the art pertaining to possible risks associated with smoking, i.e., that had ATC conducted testing, it would have learned of the harmful nature of smoking. However, the district court below concluded that "the focus placed on the objectionable documents was less on what Brown & Williamson, and therefore other manufacturers, knew, and more on Brown & Williamson's alleged failure to disclose all that it knew, an allegation not attributable to ATC by virtue of its position in the industry." 723 So.2d at 838.
In Dartez v. Fibreboard Corp., 765 F.2d 456, 461 (5th Cir.1985), the Fifth Circuit Court of Appeals stated the following:
Defendants contend that Smith's testimony is irrelevant because it relates only to Johns-Manville. Their contention reflects a misunderstanding of a critical issue in any product liability action: the state of the art pertaining to any possible risks associated with the product. Dartez was required to establish that the dangers of asbestos were reasonably foreseeable or scientifically discoverable at the time of his exposure before these defendants could be found *943 liable. Borel v. Fibreboard Paper Products Corp., 493 F.2d 1076, 1088 (5th Cir.1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

Borel holds all manufacturers to the knowledge and skill of an expert. They are obliged to keep abreast of any scientific discoveries and are presumed to know the results of all such advances. Moreover, they each bear the duty to fully test their products to uncover all scientifically discoverable dangers before the products are sold. Id. at 1089-90. The actual knowledge of an individual manufacturer is not the issue. If the dangers of asbestos were known to Johns-Manville at the time of Dartez's exposure, then the same risks were scientifically discoverable by other asbestos corporations. Therefore, the testimony of the medical director of the industry's largest member is relevant to plaintiff's attempt to meet the evidentiary burden defined by Borel.

Even relevant evidence may be excluded if its probative value is outweighed by the danger that it will unfairly prejudice or confuse the jury. Fed.R.Evid. 403. However, because Rule 403 permits the exclusion of probative evidence, it is an extraordinary remedy that must be used sparingly. United States v. Thevis, 665 F.2d 616, 633 (5th Cir.), cert. denied, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982).
Smith's testimony has a significant probative value in the jury's assessment of the state of the art. Dartez used only those portions of the deposition that were relevant to this issue. Defendants assert that this testimony was prejudicial because it allowed the jury to find these defendants liable for the knowledge and conduct of Johns-Manville. But this argument misses the point of Borelthe knowledge of one manufacturer can be a proper basis for concluding that another manufacturer should have warned of a specific danger. Rule 403 is designed to exclude evidence that has an "undue tendency to suggest decision on an improper basis...." Fed. R.Evid. 403 advisory committee note. Smith's testimony, while contrary to defendants' interest, cannot be construed as unfairly prejudicial under this standard.
Florida court's have also recognized that "[a] manufacturer has the duty to possess expert knowledge in the field of its product." Advance Chemical Co. v. Harter, 478 So.2d 444, 448 (Fla. 1st DCA 1985).
If ATC had not merged with Brown & Williamson, there would be no question that the evidence would have been admissible, as the evidence was relevant to establish that the risks of cigarette smoking that were discovered by one cigarette manufacturer were scientifically discoverable by other cigarette manufacturers. The question is therefore whether this evidence was more prejudicial than probative due to the merger. Certainly the corporate acquisition of ATC by Brown & Williamson is fortuitous; however, we do not find that this fact alone rendered the evidence inadmissible. First, after concluding that the evidence would have been admissible absent the merger, we do not believe that the Carters should be disadvantaged merely because of the corporate acquisition. Second, the trial court instructed the jury that
Plaintiffs Grady and Mildred Carter do not raise claims based on the conduct of Brown & Williamson Tobacco Corporation. Their claims are based solely on the conduct of the American Tobacco Company, prior to the time that it merged with the Brown and Williamson Tobacco Corporation in 1995.
Finally, "[w]here a trial court has weighed probative value against prejudicial impact... an appellate court will not overturn that decision absent a clear abuse of discretion." Sims v. Brown, 574 So.2d 131, 133 (Fla.1991) (quoting Trees v. K-Mart Corp., 467 So.2d 401, 403 (Fla. 4th DCA 1985)). The district court below did not find that the trial court abused its discretion. *944 In Sims, this Court added that the "weighing of relevance versus prejudice or confusion is best performed by the trial judge who is present and best able to compare the two." 574 So.2d at 133. Based on the record in this case, we conclude that the trial court did not err in permitting the evidence.

III. Conclusion
We hold that the district court erred in its decision that the statute of limitations had run on the Carters' claims. Additionally, we find that evidence presented at trial was not preempted by the Federal Cigarette Labeling and Advertising Act. Finally, we find no merit to Brown & Williamson's argument that the Carters' were allowed to proceed on an unpleaded claim. Accordingly, we quash the district court's decision in this case.
It is so ordered.
WELLS, C.J., and SHAW, LEWIS and QUINCE, JJ., concur.
ANSTEAD and PARIENTE, JJ., recused.
NOTES
[1] Other jurisdictions have reached a similar conclusion. For example, in Naegele v. R.J. Reynolds Tobacco Co., 96 Cal.Rptr.2d 666 (App.2000), the California court stated that "determining the accrual date of a cause of action for a latent, progressively developing disease allegedly caused by exposure to a toxic substance is far more difficult, because `[n]o temporally discrete event exists that encompasses the defendant's breach and the plaintiff's injury.'" Id. at 672-73 (quoting Buttram v. Owens-Corning Fiberglas Corp., 16 Cal.4th 520, 66 Cal.Rptr.2d 438, 941 P.2d 71-76 (1997)). "For statute of limitations purposes, a cause of action for latent injury ordinarily accrues when `the plaintiff discovers or reasonably should have discovered that he has suffered a compensable injury.'" Id. at 673.