EMAS, J.
In 2007, Everett Belanger (“Belanger”), a longtime smoker with Chronic Obstructive Pulmonary Disease (“COPD”), filed a post-Engle[1] lawsuit against R.J. Reynolds Tobacco Co. (“RJ.Reynolds”). Based on the record evidence, the trial court entered final summary judgment in favor of R.J. Reynolds, finding Belanger’s alleged cause of action was barred by the four-year statute of limitations. Specifically, the trial court concluded that Belanger’s cause of action accrued before the undisputed limitations bar date of May 5, 1990, as he had a “clear awareness ... that cigarettes were killing him” as of August 29, 1981. We conclude that the holdings of Engle, Carter v. Brown & Williamson Tobacco Corp., 778 So.2d 932 (Fla.2000), and Frazier v. Philip Morris USA Inc., 89 So.Sd 937 (Fla. 3d DCA 2012), require reversal of the final summary judgment entered by the trial court.
We review de novo the trial court’s order granting summary judgment. Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001); Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). The record evidence, which we must consider in a light most favorable to Belanger,[2] reflects the following:
Belanger was born in 1926, and started smoking when he was ten years old. In the 1960’s or 1970’s, Belanger, by then a professional dancer, began to experience shortness of breath while dancing. His breathing became worse in the 1970’s and 80’s, but he did not seek medical attention specifically for shortness of breath. However, Belanger did seek medical attention from Dr. Katz for “terrible colds” during that time. X-rays taken of Belanger in the 1980’s showed that his lungs had scarring. Belanger attributed the scarring to bouts of pneumonia as a child, although he was not told this by his doctor. Further, Be-langer did not tell Dr. Katz or any other doctor that he smoked cigarettes and was experiencing shortness of breath.
In August 1981, while experiencing a severe cold and cough, Belanger decided to stop smoking. As he explained in his deposition:
Q: [W]as there some point in your life where, when you were smoking, you went from enjoying smoking and smoking because you wanted to smoke, to something different, and if so, when did that occur?
A: When I had such a cold that I couldn’t breathe and I was coughing my guts out and I was reaching for a cigarette, that is when I realized to myself, you sick son of a bitch, you are reaching for something that is killing you.
Q: And when was that?
A: August the 29th, 1981.
[[Image here]]
Q: Why is it you remember that date?
[[Image here]]
A: ... I had a terrible, terrible cold. I was coughing very, very much. I couldn’t enjoy the weekend with them, but I was in the hotel all the time coughing, choking, and that’s when I was reaching for a cigarette and coughing, and I said to myself, how stupid I was, because what I was reaching for was killing me. I was dying from choking and still reaching for a cigarette. That’s when I had an awakening of what I had was an addiction to the cigarette that controlled me....
*600 Q: That’s the time that you had sufficient motivation to quit smoking?
A: Exactly. And I threw the pack away.
Q: You never had another one?
A: I never had another cigarette.
[[Image here]]
Q: And the coughing, that was a cough from a cold or a flu that you had, right?
A: Yes, yes.
Q: Had you ever had, prior to that time, any smoker’s cough that you’re aware of?
A: Every time when I had a cold, I would get that cough.
Q: Tell me why it wasn’t until 1981 that you believe you had sufficient motivation to quit smoking?
A: When I thought I was dying.
Q: Why did you think you were dying?
A: Because I was choking.
[[Image here]]
A: I’ve had severe coughs prior to that because I had pneumonia many times, and I had many colds during my lifetime, but the severe cough of that, and then coming to the realization of reaching for that cigarette as I am coughing, I came to the conclusion, or I had an awakening of what was causing it.
Belanger also testified in deposition that, while he believed at the time the smoking exacerbated his coughing and choking, he did not believe his smoking had caused a disease. Belanger testified that no medical professional told him prior to May 5, 1990 (the Engle limitations date) that his x-rays showed evidence of COPD, emphysema or other smoking-related medical condition; the first time a doctor or other medical professional advised him the scarring on his lungs was related to smoking was in 1993. This was also the first time he was referred to a pulmonologist, who determined at that time that Belanger suffered from COPD.
Thus, although R.J. Reynolds’ radiology expert, Dr. Cohen, opined, after a review of Belanger’s records in 2011, that those records revealed radiographic signs of emphysema and COPD as far back as 1985, there is no evidence that Belanger knew, or that any medical professional made him aware, he was suffering from, or manifesting symptoms of, a medical condition or disease which was caused by cigarette smoking. In fact, Dr. Cohen himself admitted that nothing in Belanger’s medical records indicated Belanger knew he had, or was told he had, COPD during the 1980’s. Belanger’s own expert, Dr. Pitch-enik, a pulmonologist, opined that although Belanger’s x-rays showed signs of emphysema in 1985, his coughing episode in 1981 would not have necessarily put him on notice that he had COPD. Belanger testified that he first became aware of this when he was diagnosed with smoking-related COPD in 1993, well after the Engle cutoff date of May 5, 1990. Therefore, because the evidence, taken in a light most favorable to Belanger, indicates that Be-langer did not know, as of May 5, 1990, the question remains whether the trial court can conclude, as a matter of law, that Belanger “reasonably should have known” prior to May 5,1990, that he was suffering from a medical condition or disease which was caused by cigarette smoking.
In granting summary judgment, the trial court found Belanger’s deposition testimony demonstrated he “was aware of his injury ... in 1981, the day that he quit smoking cold turkey. He had an awareness, clear awareness, in the transcript, that the cigarettes were killing him.” The trial court concluded that by 1981 Belan-ger “realize[d] that the cigarettes [were] killing [him],” and the statute of limitations therefore began running as of that date. *601 The trial court erred in concluding that Belanger’s deposition testimony warranted a finding, as a matter of law, that Belanger reasonably should have known that he was suffering from a medical condition or disease caused by smoking.
In Carter v. Brown & Williamson Tobacco Corp., 778 So.2d 932 (Fla.2000), the Florida Supreme Court held that, in cases involving latent or “creeping” diseases,[3] the cause of action accrues “when the accumulated effects of the deleterious substance manifest themselves to the claimant in a way which supplies some evidence of a causal relationship to the manufactured product.” Id. at 934. Carter, who smoked cigarettes for forty-four years, became concerned about his health on January 29, 1991, when he coughed and spit up blood. Upon consulting a medical dictionary, Carter discovered there were only two possible explanations for spitting up blood: lung cancer and tuberculosis. He quit smoking that day and sought medical help immediately, and he was told on February 14, 1991, that he had lung cancer. Carter filed suit on February 10, 1995.
Brown & Williamson moved for summary judgment, asserting Carter’s cause of action accrued on the day he spit up blood (January 29, 1991), and therefore, the statute of limitations ran on January 29, 1995. Carter argued that his cause of action did not accrue until he was told he had lung cancer (February 14,1991).
The First District Court of Appeal agreed with Brown & Williamson, holding that “the evidence shows beyond dispute that Grady Carter knew or should have known, before February 10, 1991, that his lungs were injured, and he was on notice that the injury was probably caused by smoking.” Id. at 938 (quoting Brown & Williamson Tobacco Corp. v. Carter, 723 So.2d 833, 835-36 (Fla. 1st DCA 1998)). The Florida Supreme Court reversed, ■ holding that although a jury could reasonably conclude Carter knew or should have known, prior to February 10, 1991, that the effects of smoking cigarettes manifested themselves in such a way to supply some evidence of a causal relationship to the cigarettes, a jury could also reasonably conclude otherwise. Carter, 778 So.2d at 938.
Importantly, the supreme court in Carter noted that “the question of when the statute of limitations begins to run in this type of case is ‘generally treated as a fact question for a jury to resolve, and therefore inappropriate for resolution on a summary judgment or directed verdict.’ ” Id. at 937. In conclusion, the supreme court held that “[bjecause conflicting reasonable inferences can be drawn from the record, this issue was a question of fact for the jury to resolve.” Id.
This court recently reversed a special interrogatory jury verdict based on a statute of limitations affirmative defense, finding “there was no competent record evidence that ‘the accumulated effects of the substance [had] manifested] in a -way which supplie[d to plaintiff] some evidence of the causal relationship to the manufactured product.’ ” Frazier v. Philip Morris USA Inc., 89 So.3d 937, 939 (Fla. 3d DCA 2012) (quoting Am. Optical Corp. v. Spiewak, 73 So.3d 120, 126 (Fla.2011)). In Frazier, the evidence at trial established that Ms. Frazier had been smoking for *602 decades and began seeking medical treatment for respiratory problems in 1986. She was repeatedly diagnosed with recurrent pneumonia and bronchitis but was never referred to a pulmonologist or ordered to undergo specialized tests for investigation of a possible condition more serious than a short-term infection. In 1991, upon returning to the doctor for an upper respiratory infection, she was referred to a pulmonologist, who eventually diagnosed her with COPD related to long-term tobacco use. Of significance, and similar to the situation in the present case, Philip Morris’s expert testified that although not diagnosed at the time, Frazier suffered from COPD as early as 1986.
This court held that “the issue was whether [Frazier] knew, or reasonably should have known, enough to permit her to commence a non-frivolous tort lawsuit against the [tobacco companies] on the basis of those physical, observable, patent symptoms and effects (‘manifestations’) before that date.” Frazier, 89 So.3d at 946 (emphasis added).
The facts of the instant case are similar in nearly all relevant respects to the facts in Frazier, in that Belanger sought treatment for respiratory problems several times prior to 1990, but was never referred to a pulmonologist or diagnosed with COPD or emphysema until 1993. Additionally, RJ Reynolds’ expert testified that based on his review of x-rays taken in prior years, Belanger did have COPD or emphysema as early as 1985. However, Belanger testified he was not made aware of this until 1993, and none of the earlier medical records establish that he was contemporaneously diagnosed with, or advised he was manifesting symptoms of, emphysema or COPD. R.J. Reynolds’ focus on the after-the-fact diagnoses obscures the real question. The question is not whether in fact Belanger had COPD prior to May of 1990, but rather whether he knew or reasonably should have known prior to May of 1990 that he had COPD (or some other medical condition or disease) which was caused by his cigarette smoking. Be-langer testified (without contradiction) that he did not know that the lung scarring (found in x-rays in 1985) was smoking related. He testified (without contradiction) that he believed the lung scarring was the result of bouts of pneumonia he suffered as a child. He testified (without contradiction) that he did not know and was not told by any doctor, prior to May 1990, that he had symptoms of COPD or emphysema. Whether he in fact knew, or should have known, are determinations which necessarily involve a weighing of the evidence and an assessment of witness credibility. Frazier, Carter and Engle compel reversal so these disputed issues of material fact may be resolved by a jury.
The only relevant distinguishing feature between the instant case and Frazier is that Belanger stated in deposition he thought his addiction to cigarettes “was killing [him].” Even with this deposition testimony, there nevertheless remains a disputed issue of material fact whether Belanger knew or should have known that the cigarettes were causing a specific smoking-related medical condition or disease. In granting summary judgment, the trial court determined that Belanger knew or that he should have known, the day he quit smoking in 1981, that he suffered a specific smoking-related injury. However, had Belanger, on the day he quit smoking, filed a lawsuit against R.J. Reynolds, and alleged therein that he was injured and entitled to damages because he was addicted to smoking cigarettes and that those cigarettes were “killing [him],” such a lawsuit surely would not have survived a motion to dismiss. As Engle and its progeny make clear, the cause of action does not *603 accrue unless and until Belanger “knew, or reasonably should have known, enough to permit [him] to commence a non-frivolous tort lawsuit against the [tobacco company] on the basis of those physical, observable, patent symptoms and effects (‘manifestations’) before that date.” Frazier, 89 So.3d at 946. The trial court’s reliance on Belanger’s claim that cigarettes “were killing [him]” as evidence that he “should have known” is the very type of generalized and undefined, “injury” analysis rejected by this Court in Frazier.
In a similar case, Philip Morris USA, Inc. v. Barbanell, 100 So.3d 152 (Fla. 4th DCA 2012), the Fourth District held the limitations period began to run when the smoker knew or should have known she had smoking-related COPD or lung cancer, not when she earlier became aware of an unspecified respiratory-related injury. Although there was evidence that the smoker had seen a doctor prior to May 1990 because she had difficulty breathing, her testing came back normal, and it was not until after May 1990 that the smoker first became aware that she had a specific medical condition (COPD) or disease (lung cancer) as a result of smoking cigarettes.
By this opinion we offer no view on the relative strength or weakness of Belan-ger’s cause of action or R.J. Reynolds’ affirmative defenses. Nor can we say who, ultimately, will prevail on the merits of this cause of action. Rather, we conclude only that, based upon the record and taking the evidence in a light most favorable to Belanger, what he knew or reasonably should have known as of May 5, 1990, remains a disputed issue of material fact which must be determined by the jury as a matter of fact and not by the court as a matter of law.
Reversed and remanded.
SUAREZ, J., concurs.

. Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006).

. AJH Prop. Invs. Ltd. v. SunTrust Bank, 89 So.3d 948, 950 (Fla. 3d DCA 2012).

. There is no dispute in this case that Belan-ger’s COPD qualifies as a "creeping disease,” which is defined as "a disease acquired over a period of years as a result of long-term exposure to injurious substances.” Carter v. Brown & Williamson Tobacco Corp., 778 So.2d 932, 936 (Fla.2000) (citing Copeland v. Armstrong Cork Co., 447 So.2d 922, 926 (Fla. 3d DCA 1984)).