# Third District Court of Appeal

## State of Florida

Opinion filed January 13, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D14-2682 & 3D14-2690
Lower Tribunal No. 12-33641

_____


**Save Calusa Trust, et al.,**
Appellants,

vs.

**St. Andrews Holdings, Ltd., etc., et al.,**
Appellees.


Appeals from the Circuit Court for Miami-Dade County, Jennifer D. Bailey, Judge.

Brannock & Humphries, and Steven L. Brannock and Sarah C. Pellenbarg (Tampa); Abigail Price-Williams, Miami-Dade County Attorney, and Dennis A. Kerbel and Lauren E. Morse, Assistant County Attorneys, for appellants.

Shubin & Bass, P.A., and Jeffrey S. Bass and Katherine R. Maxwell, for appellees.

Holland & Knight, LLP, and Frances G. De La Guardia; Craig E. Leen, City Attorney; Robert L. Krawcheck, for City of Coral Gables as amicus curiae.

Before SHEPHERD, ROTHENBERG and SCALES, JJ.

SCALES, J.

In these consolidated appeals, Appellants Save Calusa Trust ("Homeowners") and Miami-Dade County (the "County"), appeal a final summary judgment, entered in favor of St. Andrews Holding, Ltd. and Northeastern Golf LLC (together, "Owner"), declaring void a restrictive covenant under Florida's Marketable Record Title Act ("MRTA").[1] Because the County imposed the subject restrictive covenant as part of its development approval of Owner's property, the covenant is not an estate or interest in, or a claim or charge to, title to real property subject to MRTA. We reverse.

**I. Facts**

*A. Preliminary Stages of Golf Course Development*

In 1967, Owner's predecessor-in-interest, North Kendall Investments, Ltd. ("Developer"), sought to create a new golf course development in the Kendall area of unincorporated Miami-Dade County.

The property at the time was zoned General Use or "GU." Developer sought two zoning changes for the property. In order to build a ring of single family homes around the proposed golf course, Developer needed to change the zoning for the "ring" area[2] from GU to EU-M (Estate Use Modified). As to the

---

[1] Chapter 712 of the Florida Statutes.

[2] The "ring" is the land area located within 150 feet of the golf course property.

golf course portion of the property, Developer needed an "unusual use" approval to establish the open space for a golf course, a club house and a driving range.

In April 1967, Developer filed zoning applications with the County to accomplish these changes. The purpose of these applications was to create an integrated development where residential property would surround a golf course.

### B. ZAB and County Commission Approvals

On August 16, 1967, the County's Zoning Appeals Board ("ZAB") adopted a resolution approving Developer's "unusual use" application, with a condition "[t]hat restrictive covenants running with the land in proper covenant form, meeting with the approval of the Zoning Director, be recorded to ensure that the golf course be perpetually maintained as such. . . ." [3] ZAB's resolution of approval constituted final administrative agency action regarding Developer's "unusual use" application.

In its resolution of approval, ZAB also recommended to the County Commission that the County Commission, which had authority over zoning district changes, approve the proposed zoning change from GU to EU-M. The County

---

[3] This condition reflected ZAB's concurrence with the County Zoning Director who wrote in his recommendation (which was included in staff's analysis of the issue): "The approval should be subject to the usual conditions applicable to golf course development, including plot plan approval and subject to the usual restrictions to assure that the golf course will be maintained as such."

Commission authorized this zoning change for the "ring" lots on September 7, 1967.

### C. Recordation of the Restrictive Covenant

Shortly after the County Commission vote, Developer sold the property to a successor developer, Most Available, Inc. Then, consistent with ZAB's resolution approving the "unusual use," Most Available, Inc. recorded the restrictive covenant in the official records of Miami-Dade County on or about March 28, 1968. The relevant provisions of the restrictive zoning covenant are reproduced as follows:

> The aforedescribed property may only be used for the following purposes:
>
> A golf course and for the operation of a country club which may include a clubhouse, pro shop, locker rooms, swimming pools, cabanas, liquor, beer and wine facilities, dining room facilities, parking, tennis courts, putting greens, golf driving ranges and all other uses incidental thereto.
>
> These restrictions shall continue for a period of ninety-nine years unless released or revised by the Board of County Commissioners of the County of Dade, State of Florida, or its successors with the consent of 75% of the members of the corporation owning the aforedescribed property and those owners within 150 feet of the exterior boundaries of the aforedescribed property.

### D. Development of Residences in the "Ring"

After the recordation of the covenant, more than 140 single-family homes were developed within the "ring." No reference to the golf course property's restrictive zoning covenant appears in the deeds to any of the homes in the "ring" property. Homeowners have played no role in developing or maintaining, nor have they had any reciprocal responsibilities toward, the golf course property; they have had only the open, green view and errant golf balls associated with the golf course property. Under this arrangement, the golf course and Homeowners co-existed for years;[4] however, the horizon began to change when the golf course property stopped functioning as an active golf course in March of 2011.

### E. Owner's Desire to Redevelop the Golf Course

In 2003, St. Andrews Holdings acquired the golf course property and then, in 2006, conveyed a majority interest in the golf course property to Northeastern Golf LLC. Unable to make a financial success of the golf course, Owner sought to redevelop the property and approached the County with a re-zoning application.

The County rebuffed Owner and refused to process Owner's application. Perhaps predictably, Owner's application did not include confirmation of a seventy-five percent consent by Homeowners, per the terms of the restrictive

---

[4] In 1977, another predecessor of the Owner, seeking to develop a small, unused portion of the golf course, sought an interpretation of the seventy-five percent consent provision of the restrictive zoning covenant. This Court upheld the covenant in Calusa Golf, Inc. v. Dade Cty., 426 So. 2d 1165 (Fla. 3d DCA 1983).

covenant that had been recorded in 1968, pursuant to ZAB's approval of Developer's "unusual use" application.

### *F. The Instant Lawsuit and its Adjudication*

Owner did not file an administrative challenge to the County's decision not to process Owner's application. Rather, Owner, in 2012, filed the instant lawsuit asking the circuit court to declare the restrictive zoning covenant void, having been extinguished by MRTA.[5]  The Owner named each of the Homeowners as defendants in the action,[6] and named the County as a defendant as well.

On March 17, 2014, the trial court held a hearing on the parties' cross-motions for summary judgment on Counts I and II only. Owner argued that the restrictive zoning covenant was extinguished by MRTA. The County and Homeowners argued that MRTA was inapplicable to a government-imposed restrictive covenant, and that Owner failed to exhaust administrative remedies by

---

[5] Owner's amended complaint actually contains five counts: Counts I and II seek, respectively, to declare the restrictive zoning covenant void and to quiet title under MRTA. Count III seeks a rescission of the restrictive covenant because the restrictive zoning covenant allegedly was a product of mistake. Count IV seeks a declaration that the covenant is an unlawful restraint on alienation of the golf course property. Count V seeks a declaration that the restrictive zoning covenant is no longer enforceable due to materially changed circumstances.

[6] We understand "Save Calusa Trust" to be a descriptive name adopted by the Homeowners. The individual Homeowners are the parties to this action.

not seeking quasi-judicial review of the County's refusal to process Owner's re-zoning application.

The trial court issued a detailed order granting summary judgment to the Owner and denying Homeowners' and County's cross-motions for summary judgment. On September 6, 2014, the trial court entered the "Final Judgment Invalidating the 1968 Restriction and Quieting Title," determining that (i) the applicable provisions of MRTA extinguish the restrictive zoning covenant and its Homeowners' consent provision; and (ii) title is quieted as to Owner's golf course property. Homeowners and County each filed separate appeals of the trial court's grant of summary judgment, which we have consolidated.

**II. Standard of Review**

We review de novo a trial court's grant of summary judgment. Belanger v. R. J. Reynolds Tobacco Co., 140 So. 3d 598, 599 (Fla. 3d DCA 2014). We also review de novo a question of statutory interpretation. Fla. Dep't of Transp. v. Clipper Bay Invs. LLC, 160 So. 3d 858, 862 (Fla. 2015).

**III. Analysis**

*A. MRTA and the Restrictive Covenant*

The Florida Legislature enacted MRTA in 1963, "to simplify conveyances of real property, stabilize titles, and give certainty to land ownership." H & F Land, Inc. v. Panama City-Bay Cty. Airport & Indus. Dist., 736 So. 2d 1167, 1171 (Fla.

7

1999). MRTA seeks to clear defects from titles, limit the period of record searches, and extinguish old interests of record that have not been preserved by a claimant. Id.

Pursuant to MRTA, any interest in, or claim or charge to, title to real property is extinguished if such estate, interest, claim or charge is more than thirty years old (based on the date of the root of title), and has not been preserved by the statutory procedure set forth in MRTA. §§ 712.01-05, Fla. Stat. (2012).[7]

The central question in this case is whether a restrictive covenant, recorded in compliance with a government-imposed condition of a land use approval, is a title interest subject to extinguishment by MRTA.

### B. Owner's Arguments

Owner acknowledges that MRTA does not apply to zoning and other land development regulations that restrict a property's use. Rather, Owner argues that, while the restrictive zoning covenant might have been contemplated by the zoning

---

[7] The provisions of MRTA particularly relevant to this appeal are: (i) section 712.01, which provides definitions; (ii) section 712.03, which delineates nine sets of rights that are exempt from extinguishment by MRTA; and (iii) section 712.04, which supplies the operative language nullifying certain stale interests and claims in property. In relevant part, section 712.04 provides that, subject to certain exceptions, a property owner owns such property "free and clear of all estates, interests, claims, or charges, the existence of which depends upon any act, title transaction, event, or omission that occurred . . ." prior to the owner's root of title, and all such "estates, interests, claims, or charges, however denominated," . . . are declared to be null and void.

process, the subject covenant is neither a zoning regulation nor a development order.

Owner argues that the covenant, irrespective of its genesis, is a use restriction that plainly falls within MRTA's embrace. Chapter 712 mentions "use restrictions" only in section 712.03(1), which provides an exception to extinguishment if a use restriction is in the muniments of title beginning with the root of title. Because the subject use restriction was recorded in 1968, prior to the root of title, Owner asserts that the covenant must be extinguished, for it was not identified in a post-root muniment of title and it was not preserved. § 712.03(1), Fla. Stat. (2012).

Owner also argues that, because the restrictive covenant gives Homeowners an "interest" in how Owner uses its property and a "claim" against the property if Owner were to violate the covenant, then the covenant is subject to MRTA's extinguishment provision of section 712.04.

Because the covenant authorizes Homeowners – private parties, as opposed to the County – to determine through a consent mechanism whether to vacate the use restriction, Owner asserts that the covenant is private in nature and, therefore, subject to MRTA.

For these reasons, Owner asserts that the plain language of section 712.04 renders the restrictive zoning covenant null and void.

## C. The Covenant Operates as a Zoning Regulation

While we are not unsympathetic to Owner's arguments, we cannot so readily divorce the covenant from the governmental approval process that spawned it. The record reflects that ZAB's approval of Developer's unusual use application for the golf course acreage was final administrative agency action.[8] ZAB's unusual use approval was not a recommendation to the County Commission, but rather, a final approval conditioned on the recordation of the restrictive covenant.[9] The record clearly reflects that the ZAB Resolution imposed a condition that a restrictive covenant be generated and recorded. As the unusual use approval was final as of August 16, 1967, the date of the ZAB Resolution, so was the prescribed restrictive covenant. That the Developer's successor took seven months to record the restrictive covenant is of no significance.[10]

---

[8] The record particularly reflects that (i) there was no appeal of ZAB's decision to the County Commission; and (ii) in its separate approval of the proposed re-zoning of the property from GU to EU-M, the County Commission took no action to alter ZAB's unusual use approval. Code of Metropolitan Dade County, Fla., §§ 33-311(d), 33-312 (1959).

[9] ZAB's Resolution approving the unusual use did contain a recommendation that the County Commission, under the County Commission's own separate and final authority, approve the related re-zoning of the proposed golf course property; however, nothing in the ZAB Resolution, or in the County Code contemplated any County Commission approval of that portion of the ZAB Resolution that approved Developer's unusual use application for the golf course property.

[10] The record is devoid of evidence indicating any reason for Most Available, Inc.'s recording of the restrictive covenant other than to comply with the conditions of the ZAB Resolution that approved Developer's unusual use

The restrictive zoning covenant sealed the intent and objectives of the County's regulation of the golf course property. This Court has determined that a ZAB resolution, containing a restrictive covenant, constitutes a governmental regulation with the force of law. Metro. Dade Cty. v. Fontainebleau Gas & Wash, Inc., 570 So. 2d 1006 (Fla. 3d DCA 1990).

In Fontainebleau Gas, a restrictive covenant limiting the use of a property to a bank or savings and loan institution, was approved as a part of a County zoning resolution. The covenant was not recorded. Fifteen years later, a successor owner constructed a gas station on the property. This Court characterized this gas station use as "illegal." Id. at 1007. In other words, the use was not authorized by the law embodied by the restrictive covenant. This Court went on to observe: "Such a restriction on the property's use which was made in the public interest became binding on the property." Id.

Our holding that MRTA does not extinguish the subject restrictive covenant – a product of a governmental approval process – is consistent with established Florida law recognizing that government-imposed restrictions on property do not affect marketability of title. See Wheeler v. Sullivan, 106 So. 876, 878 (Fla. 1925) ("Reasonable restrictions . . . when imposed by public authority through a valid exercise of the powers of government, are not usually regarded as an incumbrance.

application.

. . .”). “[Z]oning restrictions are not considered to constitute an encumbrance on or a defect in title to real property.” 77 Am. Jur. 2d Vendor and Purchaser § 170 (2015). A restrictive zoning covenant, approved with notice at a public hearing, is not a hidden interest in property that MRTA seeks to exhume and extinguish. Blanton v. City of Pinellas Park, 887 So. 2d 1224, 1232 (Fla. 2004).

Furthermore, no language in MRTA or in MRTA's underlying legislative history, extends the reach of MRTA to a zoning regulation; no statutory language forges a change of this magnitude. See, e.g., Coastal Petroleum Co. v. Am. Cynamid Co., 492 So. 2d 339, 344 (Fla. 1986) (explaining that if the Legislature had intended to apply MRTA to divest the State of title to certain sovereignty lands, thereby changing "well-established law," the Legislature would have "by special reference to sovereignty lands" given some indication in the act or the legislative history of its intention).

**IV. Conclusion**

Therefore, we conclude that the duly imposed restrictive covenant in this case is a governmental regulation, rather than an estate, interest, claim or charge affecting the marketability of the property's title so as to be subject to extinguishment under MRTA.[11] We reverse the trial court's summary judgment for Owner and remand for proceedings consistent herewith.[12]

---

[11] We need not, and do not, reach the questions of whether a non-governmental restrictive covenant constitutes a "claim" under section 712.02, or whether the

12

Reversed and remanded.

---

restrictive zoning covenant in this case is delineated as an exception to MRTA under section 712.03.

[12] We do not quarrel with the trial court's implicit determination that, given the County's unbending construction of the subject restrictive covenant, it would have been futile to require Owner to exhaust administrative remedies before filing the instant lawsuit. While we express no opinion on the issues remaining in this case, we are puzzled that the County did not process Owner's re-zoning application and conduct a quasi-judicial hearing, considering sections 33-304, 33-309, 33-310, 33-311 and 33-316 of the Miami-Dade County Code of Ordinances. See Bd. of Cty. Comm'rs of Brevard Cty. v. Snyder, 627 So. 2d 469, 474 (Fla. 1993). Issues still pending before the circuit court might have been addressed as matters preliminary to a proposed re-zoning (for example, whether changed circumstances exist to warrant cancellation of the covenant and whether the covenant constitutes an unlawful restraint on alienation). After all, the provision in the County-imposed covenant that granted Homeowners a right to consent to a re-zoning of the golf course property did not grant Homeowners a right to consent to a quasi-judicial hearing that, in part, would determine whether the County's interest in maintaining the covenant should continue.