# Third District Court of Appeal

## State of Florida

Opinion filed February 1, 2023.

_____

No. 3D22-1296
Lower Tribunal No. 21-67 AP, Resolution No. Z-34-21
_____

**Save Calusa, Inc., et al.,**
Petitioners,

vs.

**Miami-Dade County, et al.,**
Respondents.

A Writ of Certiorari to the Circuit Court of Miami-Dade County, Appellate Division, Daryl E. Trawick, Maria de Jesus Santovenia, and Marlene Fernandez-Karavetsos, Judges.

David J. Winker, P.A., and David J. Winker, for petitioners.

Geraldine Bonzon-Keenan, Miami-Dade County Attorney, Dennis A. Kerbel, Lauren E. Morse, and Cristina Rabionet, Assistant County Attorneys; Bilzin Sumberg Baena Price & Axelrod LLP, Eileen Ball Mehta, Brian S. Adler, and Liana M. Kozlowski, for respondents.

Before HENDON, MILLER, and LOBREE, JJ.

MILLER, J.

We deny respondents' motions for rehearing, but we grant clarification, withdraw our previous opinion, and substitute the following opinion in its stead:

Petitioner, Amanda Prieto, seeks second-tier certiorari review of an appellate decision by the circuit court of the Eleventh Judicial Circuit of Miami-Dade County denying relief from a zoning resolution.[1]  In 2020, the Miami-Dade Board of County Commissioners lifted a recorded restriction limiting the use of the site of the now-shuttered Calusa Country Golf Club to a golf course, club house, and certain ancillary uses.  The following year, the Commission adopted the challenged resolution, rezoning the property to allow for the development of 550 single-family residences on the situs.  Prieto sought first-tier certiorari review seeking to void the resolution on the basis that the County failed to publish notice of the public hearing.  The circuit court determined Prieto lacked standing and, regardless, notice was adequate.  Concluding the circuit court departed from the essential

---

[1] Save Calusa, Inc. also petitions for relief.  Because the public hearing was not properly noticed and Prieto has standing, we need not address the secondary issue of whether the circuit court departed from the essential requirements of law in concluding Save Calusa, Inc. lacked standing.

requirements of law by failing to apply the correct regulatory framework and established law, we grant the petition.

## BACKGROUND

This dispute traces its origins to the 1960s. In 1967, North Kendall Investment, Ltd. obtained a zoning resolution authorizing the development of the golf course. The resolution contained a ninety-nine-year restrictive covenant preventing any other use of the property absent the approval of seventy-five percent of affected property owners and the County Commission.

Several years later, a successor developer sought to rezone the golf course to facilitate the construction of additional homes. Community residents and the County consistently resisted further development efforts, and protracted litigation ensued. See, e.g., Calusa Golf, Inc. v. Dade County, 426 So. 2d 1165 (Fla. 3d DCA 1983).

After this court reaffirmed the viability of the restrictive covenant, see Save Calusa Tr. v. St. Andrews Holdings, Ltd., 193 So. 3d 910, 911 (Fla. 3d DCA 2016), respondent, Kendall Associates I, LLLP, an affiliate of GL Homes, acquired the property. More than seventy-five percent of affected property owners subsequently agreed to eliminate the restrictive covenant, and the Commission released the land from the restriction. Kendall

3

Associates then filed an application to rezone the property to allow for the development of 550 single-family units on the land.

A public hearing was properly noticed. On the eve of the slated hearing, however, the Commission expressed concerns regarding the ability to satisfy a quorum.[2] The hearing was canceled and reset. Notice of the rescheduled hearing was mailed to residents within one-half mile of the subject property, posted at the hearing site and property, and electronically transmitted to self-subscribed users of the electronic notification service.

Twelve days before the public hearing was due to convene, counsel for petitioners objected and alerted the County to the fact that the notice reflected the wrong applicant and had yet to be published in a newspaper of general circulation, as required by section 33-310 of the Miami-Dade County Code. Despite this objection, the hearing proceeded.

At the hearing, Prieto was allocated one minute to present her objection. She testified that she resides a few hundred feet from the site of the now-defunct golf course. Relying upon a staff analysis report, Prieto argued that the school her children currently attend, Calusa Elementary, is

---

[2] Section 1.08 of the Miami-Dade County Code provides, in pertinent part: "No action of the Commission shall be taken except by a majority vote of those present at a meeting at which a majority of the Commissioners then in office is present."

4

at capacity. The addition of hundreds of homes would displace students and necessitate busing to neighboring schools. She further testified she had submitted extensive documentation as to adverse environmental impacts, including potential effects on fish and wildlife.

The Commission adopted the resolution, and Prieto sought first-tier certiorari review. The circuit court denied relief. In doing so, it concluded Prieto lacked standing because she raised only generalized concerns regarding increased traffic and diminished property values, and, alternatively, because the County satisfied the regulatory notice requirements for the originally scheduled hearing, it was not required to publish any further notice. The instant petition ensued.

**STANDARD OF REVIEW**

In a second-tier certiorari proceeding concerning the quasi-judicial decision of a local governmental entity, "[o]ur 'inquiry is limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law, or, as otherwise stated, departed from the essential requirements of law.'" Fla. Int'l Univ. v. Ramos, 335 So. 3d 1221, 1224 (Fla. 3d DCA 2021) (quotation marks omitted) (quoting Custer Med. Ctr. v. United Auto Ins. Co., 62 So. 3d 1086, 1092 (Fla. 2010)). "Clearly established law can be derived not only from case law dealing with the same

5

issue of law, but also from 'an interpretation or application of a statute, a procedural rule, or a constitution[al] provision.'" State, Dep't of Highway Safety & Motor Vehicles v. Edenfield, 58 So. 3d 904, 906 (Fla. 1st DCA 2011) (quoting Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 890 (Fla. 2003)).

## LEGAL ANALYSIS

### Notice of the Public Hearing

*Section 33-310, Code of Miami-Dade County, Florida*

Section 33-310 of the Miami-Dade County Code, entitled, in part, "Notice and Hearing Prerequisite to Action," sets forth the notice requirements applicable to public hearings on zoning applications before the Board of County Commissioners.[3] The Code prohibits action on any application "until a public hearing has been held upon notice of the time,

---

[3] Similarly, Section 166.041(6), Florida Statutes (2021), regulating municipalities, provides:

> [A] municipality may specify additional requirements for the adoption or enactment of ordinances or resolutions or prescribe procedures in greater detail than contained herein. However, a municipality shall not have the power or authority to lessen or reduce the requirements of this section or other requirements as provided by general law.

§ 166.041(6), Fla. Stat. In this context,

> [s]tanding to initiate a challenge to the adoption of an ordinance or resolution based on a failure to strictly adhere to the provisions contained in this section shall be limited to a person who was entitled to actual or constructive notice at the time the ordinance or resolution was adopted.

§ 166.041(7), Fla. Stat.

6

place, and purpose of such hearing."  Miami-Dade County, Fla., Code § 33-310(c) (2021).

The Code envisions four distinct forms of notice.[4]  Notice must first be published in "a newspaper of general circulation in Miami-Dade County."  § 33-310(c)(1).  Notice must then be both mailed to homeowners within a specified radius and posted on the affected property, and a courtesy copy should then be furnished to the president of certain specified homeowners' associations.  § 33-310(c)(2)–(3), (e).  Failure to publish, post, or mail notice to affected homeowners "renders voidable any hearing held on the application."  § 33-310(g).  In contrast, "[t]he failure to provide courtesy notices shall not render a hearing voidable."  Id.

The plain language of the Code makes clear that published notice is mandatory and not discretionary.  See § 33-310(c)(1)–(3).  Indeed, the Code expressly states "[t]he word 'shall' is always mandatory and not merely directory."  Miami-Dade County, Fla., Code § 1-2(h) (2021); see also Fla. Tallow Corp. v. Bryan, 237 So. 2d 308, 309 (Fla. 4th DCA 1970) ("The word 'shall' when used in a statute or ordinance has, according to its normal usage, a mandatory connotation."); City of Hollywood v. Pettersen, 178 So.

---

[4] Notice must be provided no later than fourteen days prior to the public hearing.  § 33-310(c).

7

2d 919, 921 (Fla. 2d DCA 1965) ("In the promulgation of zoning regulations there must be strict adherence to the requirements of notice and hearing preliminary to the adoption of such regulations."). This is consistent with the overwhelming weight of modern authority in this arena. See Patricia E. Salkin, Mandatory Requirements, in American Law of Zoning § 8:3 (5th ed. 2022) ("The procedural steps required by the state zoning enabling statutes usually are regarded as mandatory. A failure substantially to comply with such requirements renders a zoning ordinance invalid."); 83 Am. Jur. 2d Zoning and Planning § 470 (same).

Here, the County was forewarned by Prieto and others that its notice was defective. The notice reflected the wrong applicant, and the County failed to publish notice as required. Nonetheless, it proceeded forward with the hearing.

Respondents argue, however, that published notice was unnecessary because the Commission merely postponed the original hearing, and Prieto was able to attend. These arguments miss the mark. The original hearing was not convened and recessed. Instead, it was canceled before it was scheduled to occur. Thus, the hearing on the resolution cannot be deemed a mere continuation of a properly noticed hearing. See Shaughnessy v. Metropolitan Dade County, 238 So. 2d 466, 468 (Fla. 3d DCA 1970) (holding

8

zoning appeals board abided by statutory notice provisions where board's consideration of unusual or special use application was continuation of previously noticed hearing).

Further, the Code contains no notice exception for canceled and rescheduled hearings, and this court has not previously determined that such an exception exists. Instead, in closely considering the analogous question of whether the failure to provide statutory notice of a rescheduled public hearing is fatal to the viability of a subsequently enacted zoning ordinance, this court and others have universally concluded that "[s]trict compliance with the notice requirements . . . is a jurisdictional and mandatory prerequisite to the valid enactment of a zoning measure." Webb v. Town Council of Town of Hilliard, 766 So. 2d 1241, 1244 (Fla. 1st DCA 2000) (quoting Lady J. Lingerie, Inc. v. City of Jacksonville, 973 F. Supp. 1428, 1434 (M.D. Fla. 1997)). This view has been applied equally to rescheduled or postponed public hearings. See Coleman v. City of Key West, 807 So. 2d 84, 85–86 (Fla. 3d DCA 2001) (holding ordinance null and void where rescheduled public hearing on proposed zoning ordinance failed to comply with statutory notice requirements); City of Fort Pierce v. Davis, 400 So. 2d 1242, 1245 (Fla. 4th DCA 1981) (holding ordinance void for failure to give notice as required by applicable statute where public hearing had been rescheduled).

9

This interpretation is consistent with the plain text of the ordinance and the purpose underlying the notice requirements. Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 454 (Fla. 1992) ("It is a fundamental principle of statutory construction that where the language of a statute is plain and unambiguous there is no occasion for judicial interpretation."). The text of the ordinance distinguishes between a failure to publish notice and a failure to provide courtesy notice. The former renders the hearing voidable, while the latter imposes no such penalty. Moreover, zoning action notice provisions are designed to:

> [P]rotect interested persons, who are thus given the opportunity to learn of proposed ordinances; given the time to study the proposals for any negative or positive effects they might have if enacted; and given notice so that they can attend the hearings and speak out to inform the city commissioners prior to ordinance enactment.

Coleman, 807 So. 2d at 85. Notice requirements further ensure that unknown individuals with an interest in zoning matters are constructively informed of contemplated action and aid the Commission in gathering sufficient information to sagaciously discharge their duties. Absent strict compliance, these three objectives fail.

Invoking a series of administrative deference cases, the County further argues that it is endowed the exclusive authority to determine the parameters of notice. See, e.g., Atl. Shores Resort, LLC v. 507 S. St. Corp., 937 So. 2d

10

1239, 1245 (Fla. 3d DCA 2006). Casting aside the fact that this line of cases predates the recently adopted constitutional amendment abolishing deference to administrative actions, it is axiomatic that the application of all rules and regulations promulgated by a county are subject to judicial review. See § 125.018, Fla. Stat. (2022); Art. V, § 21, Fla. Const.; see also Evans Rowing Club, LLC v. City of Jacksonville, 300 So. 3d 1249, 1251 (Fla. 1st DCA 2020) (B.L. Thomas, J., concurring specially) ("[T]he constitution itself provides that *all* zoning decisions must be compliant with *general law*.").

Accordingly, in concluding no published notice of the public hearing was required, the circuit court strayed from the plain language of the Code and applicable precedent. Gonzalez v. State, 15 So. 3d 37, 39 (Fla. 2d DCA 2009) ("A departure from the essential requirements of law, alternatively referred to as a violation of clearly established law, can be shown by a misapplication of the plain language in a statute."); Just. Admin. Comm'n v. Peterson, 989 So. 2d 663, 665 (Fla. 2d DCA 2008) ("When the circuit court does not apply the plain and unambiguous language of the relevant statute, it departs from the essential requirements of law.").

### Standing

***Standing to Challenge a Zoning Action***

We next examine whether Prieto possessed standing to void the Commission's action. In the seminal case of Renard v. Dade County, 261

11

So. 2d 832 (Fla. 1972), the Florida Supreme Court articulated the legal standing necessary to "challenge the zoning action or inaction" of a governmental body. Rinker Materials Corp. v. Metropolitan Dade County, 528 So. 2d 904, 906 (Fla. 3d DCA 1987). There, the court determined that "[a]n aggrieved or adversely affected person having standing to sue is a person who has a legally recognizable interest which is or will be affected by the action of the zoning authority in question." Renard, 261 So. 2d at 837. In this regard, the aggrieved party must suffer "special damages," defined as "a definite interest exceeding the general interest in community good share[d] in common with all citizens." Id. Critically, a court must consider "the proximity of [the party's] property to the property to be zoned or rezoned, the character of the neighborhood, . . . and the type of change proposed."[5] Id.; see also Rinker, 528 So. 2d at 906.

Ordinarily, abutting homeowners have standing by virtue of their proximity to the proposed area of rezoning. See Paragon Grp., Inc. v. Hoeksema, 475 So. 2d 244, 246 (Fla. 2d DCA 1985), review denied, 486 So. 2d 597 (Fla. 1986) (holding owner of single-family home directly across from

---

[5] Although the court noted that "notice requirements are not controlling on the question of who has standing," it expressly recognized that "[t]he fact that a person is among those entitled to receive notice under the zoning ordinance is a factor to be considered on the question of standing to challenge the proposed zoning action." Id.

rezoned property had standing to challenge proposed rezoning); see also Elwyn v. City of Miami, 113 So. 2d 849, 851 (Fla. 3d DCA 1959) ("Plaintiffs as abutting home owners [sic] were entitled to maintain the suit challenging the propriety, authority for and validity of the ordinance granting the variance.").  Such proximity generally establishes that the homeowners have an interest greater than "the general interest in community good share[d] in common with all citizens."  Renard, 261 So. 2d at 837.

***Standing to Void an Improperly Noticed Public Hearing***

Those seeking to void an improperly noticed public hearing on a land use decision bear a slightly lower burden.  Renard provides that where there is a defect in notice, "[a]ny affected resident, citizen or property owner of the governmental unit in question has standing to challenge such an ordinance."  Id. at 838; see also Citizens Growth Mgmt. Coal. of W. Palm Beach, Inc. v. City of W. Palm Beach, Inc., 450 So. 2d 204, 206 (Fla. 1984) (quoting Renard, 261 So. 2d at 834) ("This [c]ourt held that . . . an affected resident, citizen, or property owner had standing" to challenge an ordinance "enacted without proper notice required under the enabling statute or authority creating the zoning power.").

In the first-tier proceedings, the circuit court acknowledged the location of Prieto's home.  However, conflating the concerns she raised with those of

13

other objecting residents, the court further determined that her complaints were limited to traffic congestion and reduced property values, both of which it deemed insufficient to confer standing. Notwithstanding the fact that this court has previously determined that an adverse effect on the value of property "surely represents a legally recognizable interest," Rinker, 528 So. 2d at 906, this reasoning fails to account for the principle that "[a]ny affected resident, citizen or property owner . . . has standing to challenge" a zoning action effectuated at an improperly noticed public hearing. Renard, 261 So. 2d at 838. The failure to apply these controlling legal standards constituted "a classic departure from the essential requirements of the law."[6] State v. Jones, 283 So. 3d 1259, 1266 (Fla. 2d DCA 2019).

## CONCLUSION

The decision to grant or withhold relief by way of second-tier certiorari largely depends on our "assessment of the *gravity of the error* and the *adequacy of other relief*." Custer, 62 So. 3d at 1092 (quoting Haines City

---

[6] While the first-tier briefs alluded to traffic congestion, the record of the public hearing contains no such reference. "[T]he well[-]established rule applicable to . . . certiorari proceeding[s] [is] that the reviewing court's consideration shall be confined strictly and solely to the record of proceedings by the agency or board on which the questioned order is based." Dade County v. Marca, S.A., 326 So. 2d 183, 184 (Fla. 1976). "This rule controls the determination of the factual basis establishing standing to initiate a certiorari proceeding in the circuit court." City of Fort Myers v. Splitt, 988 So. 2d 28, 32–33 (Fla. 2d DCA 2008).

<u>Cmty. Dev. v. Heggs</u>, 658 So. 2d 523, 530 n.14 (Fla. 1995)).  In the instant case, if the legal error is left uncorrected, it will remain unknown the extent of the impact resulting from the error in notice, including whether Prieto would have presented a more developed objection.  Allowing the decision to stand threatens to compromise the due process the regulatory framework strives to afford.  Accordingly, we grant the petition for certiorari and quash the order under review.

Petition granted; order quashed.